The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Vernon VANREES, Defendant–Appellant.

No. 01CA0149.

Colorado Court of Appeals, Div. V.

Feb. 13, 2003.

Rehearing Denied April 10, 2003.

Certiorari Granted Dec. 8, 2003.

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Vernon Vanrees, appeals the judgment of conviction entered upon jury verdicts finding him guilty of attempted second degree murder, second degree assault, attempted first degree sexual assault, and first degree burglary. We affirm the conviction for second degree assault and reverse and remand for a new trial on the remaining charges.

The undisputed evidence established that, following his work shift at a restaurant, defendant voluntarily consumed a very large volume of alcohol, broke into a residence, physically assaulted the sixty-six-year-old victim, attempted to sexually assault her, and caused her serious bodily injury. During the assaults, defendant's conduct ranged from

confrontational, combative, and enraged assault, to meek pleading for sexual favors, to granting permission to the victim to kill him, to an expression of a desire to take his own life. After the assault, and at the victim's request, defendant called for emergency assistance, and he was arrested at the scene.

By his own testimony, the twenty-nine-year-old defendant was "mentally slow," always had been in special education classes, and never had lived apart from his parents. He knew the victim—his parents had been tenants of her parents—but he had not seen her for many years.

The victim could not identify any problems between the two families, had never had any dealings or conversation with defendant, and knew of no reason that he would want to hurt her. She characterized defendant's conduct as bizarre and inexplicable.

Defendant professed no recollection whatsoever of the incident, agreed that he had never had any problems with the victim, and testified that he had no feelings for her and no reason to hurt her. His defense was voluntary intoxication and lack of mens rea.

During its deliberations, the jury sent the court a note that read: "Almost every count includes the term 'knowingly.' Can mental capacity, 'slowness' of an individual, or potential insanity be part of the knowingly definition[?] Please provide us a better definition of knowingly."

Defendant requested the court to instruct the jury in response that mental capacity and slowness may be considered in determining whether the prosecution has proved the mens rea of knowingly beyond a reasonable doubt. However, the court rejected that proposal and instead instructed the jury:

> The defendant has not entered a plea of not guilty by reason of insanity. Thus, whether the defendant suffered from a severely abnormal mental condition caused by mental disease or defect that grossly and demonstrably impaired his perception or understanding of reality is not an issue for your consideration.
>
> You will not receive any additional instruction regarding the culpable mental state

"knowingly," other than that contained in Instructions Nos. 17 and 18.

> In determining whether or not the element of "knowingly" has been proved beyond a reasonable doubt, you may consider any evidence, other than intoxication, presented in this case, or lack of evidence, that you believe to bear on that element.
>
> You are reminded that you must consider the instructions as a whole.

Instruction 17, to which the supplemental instruction referred, told the jury, in relevant part:

> A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists. A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

Instruction 18 informed the jury that it could not consider evidence of intoxication in determining whether the prosecution had proved the mental state of "knowingly" beyond a reasonable doubt, but could consider such evidence in determining whether defendant acted with intent and after deliberation. It also defined intoxication as a "disturbance of mental or physical capacities resulting from the introduction of any substance into the body."

The trial court, explaining its reasoning for the supplemental instruction, stated that the instruction on insanity inured to defendant's benefit, because if it had told the jury only that defendant had not entered an insanity plea, the jury would not know how insanity was defined. It further observed that the jury had referred to the concept of mental capacity and that the prosecution was required to prove not that defendant had the capacity to form the culpable mental state of knowingly, but that he actually had this culpable mental state beyond a reasonable doubt.

This appeal followed defendant's conviction.

We note that counsel asserted at oral argument that defendant is "developmentally dis-

abled." However, that term was not employed during trial to describe defendant's condition. Accordingly, we use the terms employed at trial.

## I.

■ Defendant contends the trial court's supplemental instruction erroneously precluded the jury from considering his "mental slowness" and low mental capacity in determining whether the prosecution had proved that he acted knowingly beyond a reasonable doubt. Specifically, defendant contends that, by addressing only the issue of insanity and not "mental slowness" or capacity, and by providing that the jury could not consider insanity, the court's instruction erroneously permitted the jury to determine that evidence of his "mental slowness" and low mental capacity fell within the given definition of insanity and thus could not be considered. We agree.

■ Generally, we presume that a jury understands the instructions it is given. *Copeland v. People,* 2 P.3d 1283 (Colo.2000); *Leonardo v. People,* 728 P.2d 1252 (Colo. 1986). However, that presumption is rebutted when, as here, the jury indicates that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused. *See Leonardo v. People, supra,* 728 P.2d at 1256.

Here, the parties agree, and we concur, that an additional instruction was appropriate. The jurors were unclear as to whether they could consider defendant's "mental slowness" or capacity to determine whether he knowingly committed the crimes charged, and the relevant instructions provided no clear answer to this question. Whether defendant acted knowingly was central to his guilt or innocence, and the definition of "knowingly" presents a question of law.

■ A defendant's right to due process requires correct jury instructions bearing on the prosecution's burden to prove the defendant guilty beyond a reasonable doubt. *People v. Harlan,* 8 P.3d 448 (Colo.2000); *see also Chambers v. People,* 682 P.2d 1173 (Colo.1984)(jury must be adequately instruct-

ed to enable it to assess whether every element of an offense has been proved beyond a reasonable doubt).

■ A plea of insanity is waived if it is not specifically pleaded at the time of arraignment or, upon a showing of good cause, prior to trial. Section 16–8–103(1.5)(a), C.R.S. 2002; *People v. Low,* 732 P.2d 622, 630 (Colo.1987)(evidence of insanity irrelevant and inadmissible at a trial on the merits in the absence of a special plea). However, if a defendant's "mental slowness" does not rise to the level of insanity or impaired mental condition, he or she is not required to plead such a defense in order to present evidence regarding that mental condition as it bears on mens rea. *See Hendershott v. People,* 653 P.2d 385 (Colo.1982); *People v. Requejo,* 919 P.2d 874 (Colo.App.1996).

Here, in response to the jury's question whether "potential insanity [can] be part of the knowingly definition," the trial court was faced with a difficult task in trying to define the various mental conditions that could apply. Its supplemental instruction accurately informed the jury that defendant had not asserted insanity. The instruction also gave the jury a definition of insanity ("a severely abnormal mental condition caused by mental disease or defect that grossly and demonstrably impaired his perception or understanding of reality"), adapted from § 16–8–101.5, C.R.S.2002. However, the instruction did not inform the jury that it could consider evidence of defendant's "mental slowness" and capacity in assessing whether he knowingly committed the crimes charged, but instead simply referred the jury to some original instructions. Essentially, it thus failed to answer part of the jury's question. *See Leonardo v. People, supra,* 728 P.2d at 1255 (a jury should be referred back to instructions only when it is apparent that it has overlooked some portion of the instructions or when the instructions clearly answer the jury's inquiry).

The jury may have erroneously understood the court's instructions to preclude consideration of "mental slowness" or capacity because such evidence fell within the insanity definition provided. For example, it could

have concluded that defendant's "mental slowness" constituted an "abnormal mental condition" that "impaired his perception or understanding of reality." Therefore, the jury could have concluded that such evidence "was not an issue" for its consideration.

Thus, while the court's instruction on insanity was not per se erroneous, it did not provide the jury with a meaningful distinction between insanity and the less severe mental conditions, and it did not explain the legal implications of those conditions. In the context of defendant's case, we view this distinction as critical. By focusing only on the jury's reference to insanity and not addressing the jury's question regarding "mental slowness," the instruction could have precluded the jury from considering this aspect of the defense and thus impermissibly lowered the prosecution's burden of proof. *See Hendershott v. People, supra* (it is a violation of due process to require the prosecution to establish the culpable mental state beyond a reasonable doubt while, at the same time, prohibiting a defendant from presenting evidence to contest this issue).

Hence, the jury was allowed to find defendant guilty of the charged crimes without necessarily finding beyond a reasonable doubt that he was aware that his conduct was practically certain to cause the proscribed results. *See* § 18–1–501(6), C.R.S.2002.

The People argue that paragraph three of the supplemental instruction—allowing the jury to consider any evidence introduced at trial, except intoxication, to determine whether defendant had formed the mental state of knowingly—adequately informed the jury that it could consider defendant's "mental slowness." However, this paragraph did not mention "mental slowness" or mental capacity. Moreover, if the jury mistakenly believed that "mental slowness" fell within the definition of insanity, and thus was not to be considered, then the cited paragraph would not correct this mistake. Hence, we reject this argument.

■ Nor can we conclude that the error is harmless beyond a reasonable doubt. *See Topping v. People,* 793 P.2d 1168 (Colo.1990); *People v. Gracey,* 940 P.2d 1050 (Colo.App. 1996) (failure to instruct the jury properly

with respect to an essential element of the offense charged generally constitutes reversible error); *People v. Requejo, supra* (error not harmless if it affects the outcome of the trial). A central theme in this case was defendant's "mental slowness." If the jury erroneously believed it was not allowed to consider such evidence in making a determination of knowingly, then defendant was surely prejudiced. *See Leonardo v. People, supra* (court erred in failing to respond adequately to the jury's inquiry).

We must accordingly reverse defendant's convictions for attempted second degree murder, attempted first degree sexual assault, and first degree burglary, all of which required the mens rea "knowingly." Given this disposition, we need not address defendant's additional contentions of error concerning this instruction.

However, defendant was also convicted of second degree assault, a crime that requires specific intent. *See* § 18–3–203(1)(b), C.R.S. 2002. Defendant does not challenge the court's instructions concerning specific intent, nor does he assert in his opening brief that the instructional error concerning "knowingly" affects this conviction.

Because there was no jury confusion concerning the role of defendant's acknowledged "mental slowness" or capacity in determining specific intent, we must presume the jury understood those instructions. *See Leonardo v. People, supra,* 728 P.2d at 1255. Reversal of the other three convictions does not mandate reversal on the second degree assault conviction because the error relates only to those convictions involving the mens rea "knowingly." *See People v. Martinez,* 634 P.2d 26, 31 (Colo.1981). Accordingly, we affirm the judgment of conviction on that count.

## II.

Because it will arise on remand, we address and reject defendant's contention that the trial court erred by refusing to instruct the jury that intoxication is an affirmative defense.

Defendant asserted the "affirmative defense" of intoxication under §§ 18–1–804(1) and 18–1–805, C.R.S.2002. Relying upon *People v. Harlan, supra*, the trial court refused to instruct that it was an affirmative defense. In *Harlan*, decided approximately three months after the acts at issue here, the supreme court determined that § 18–1–804 concerning voluntary intoxication does not provide a statutory affirmative defense, but rather constitutes an evidentiary rule permitting such evidence to negate specific intent.

Defendant contends *Harlan* was an unforeseeable enlargement of a criminal statute because Colorado law previously had regarded voluntary intoxication as an affirmative defense. He argues that the trial court's retroactive application of *Harlan* violates the Ex Post Facto and Due Process Clauses of the federal and state constitutions. Because we find that the decision in *Harlan* was foreseeable, we disagree.

 Under both constitutions, the enactment of an ex post facto law is prohibited. As relevant here, a statute violates the Ex Post Facto Clause when it deprives a defendant of a defense that was available at the time the crime was committed. *See People v. District Court*, 834 P.2d 181, 199 (Colo.1992); *Aue v. Diesslin*, 798 P.2d 436 (Colo.1990).

 Judicial decisions generally are not subject to ex post facto prohibitions. *See Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)(Ex Post Facto Clause limits the powers of the legislature and does not of its own force apply to the judicial branch of government); *Aue v. Diesslin, supra* (judicial decisions normally are applied retrospectively to conduct that occurred before the decision was rendered); *People v. Grenemyer*, 827 P.2d 603 (Colo. App.1992). However, similar principles are applicable under the Due Process Clause. *Aue v. Diesslin, supra*, 798 P.2d at 439; *see also Rogers v. Tennessee, supra* (holding that limitations on retrospective judicial decision-making arise from the Due Process Clause, not the Ex Post Facto Clause). Therefore, we address defendant's argument solely on due process grounds.

 To determine whether due process precludes the retrospective application of a judicial decision in a criminal case, we must decide whether the decision was sufficiently foreseeable so that the defendant had fair warning that the interpretation given to the relevant statute would be applied in his or her case. *Aue v. Diesslin, supra*, 798 P.2d at 441. In determining foreseeability, we first look to the plain language of the statute. *See Aue v. Diesslin, supra* (holding was foreseeable because it was based on the plain language of the statute, and parole board's erroneous interpretation did not compel different result).

Section 18–1–804 provides in pertinent part:

(1) Intoxication of the accused is not a defense to a criminal charge, except as provided in subsection (3) of this section, but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant when it is relevant to negative the existence of a specific intent if such intent is an element of the crime charged.

. . . .

(3) A person is not criminally responsible for his conduct if, by reason of intoxication that is not self-induced at the time he acts, he lacks capacity to conform his conduct to the requirements of the law.

The plain language of § 18–1–804 does not provide that voluntary intoxication is an affirmative defense. Section 18–4–804(1) specifically states that voluntary intoxication is not a defense to a criminal charge. Rather, only involuntary intoxication, described under subsection (3), negates criminal liability.

Further, § 18–1–805, heavily relied upon by defendant, states that "[t]he issue of *responsibility* under sections 18–1–801 to 18–1–804 is an affirmative defense" (emphasis added). Section 18–1–804 only mentions responsibility under subsection (3), which addresses involuntary intoxication. Accordingly, only involuntary intoxication constitutes a statutory affirmative defense under these provisions.

Defendant cites numerous Colorado cases that refer to voluntary intoxication as an

affirmative defense. *See, e.g., People v. Del-Guidice* 199 Colo. 41, 44, 606 P.2d 840, 842 (1979)("The second issue raised in this appeal concerns the affirmative defense of voluntary intoxication"), *disapproved on other grounds by People v. Harlan, supra; People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977)(stating voluntary intoxication is an affirmative defense to specific intent crimes generally). However, none of the cited cases directly considers whether voluntary intoxication is an affirmative defense. To the contrary, in *People v. Cornelison, supra,* the court stated that "a defendant's voluntary intoxication may be evidence of his inability to entertain the specific intent required for conviction of second-degree murder." *People v. Cornelison, supra,* 192 Colo. at 340, 559 P.2d at 1105.

■ In addition, an affirmative defense basically admits the doing of a charged act, but seeks to justify, excuse, or mitigate it. *See People v. Huckleberry,* 768 P.2d 1235 (Colo.1989). Intoxication, however, has been recognized as negating the specific intent mental state, but not as operating to justify or excuse the commission of an offense. *See Dolan v. People,* 168 Colo. 19, 449 P.2d 828 (1969); *cf. People v. Braley,* 879 P.2d 410 (Colo.App.1993)(in sexual assault case, trial court did not err by failing to instruct that consent was an affirmative defense; by finding that defendant caused submission, jury necessarily found that victim did not consent).

Furthermore, in *People v. Quintana,* 996 P.2d 146, 148 (Colo.App.1998), decided well before the acts at issue here, a panel of this court held, "[V]oluntary intoxication does not constitute an affirmative defense to a crime. It is used only to negate specific intent when that intent is an element of the crime charged."

Defendant also cites the Model Criminal Jury Instructions, which have stated since 1983 that voluntary intoxication is an affirmative defense. *See CJI–Crim.* 7:13 (1983). However, model instructions are intended as guidelines and are not wholly determinative. *See CJI–Crim.* at v. A model jury instruction does not constitute the law of the state. *See Guam v. McGravey,* 14 F.3d 1344 (9th Cir. 1994).

For all these reasons, we conclude that it was foreseeable that the supreme court would hold voluntary intoxication could not be considered an affirmative defense. Because this judicial decision in *Harlan* was sufficiently foreseeable, defendant had fair warning of this interpretation of the statute and therefore was not deprived of due process.

### III.

■ Defendant next contends the trial court erred in instructing the jury that intoxication should not be considered in determining whether the prosecution had proved the mental state of knowingly beyond a reasonable doubt. Specifically, defendant contends § 18–1–804(1) does not prohibit the introduction of evidence of voluntary intoxication with respect to the mens rea of knowingly. We disagree.

Colorado courts have consistently interpreted § 18–1–804(1) as excluding evidence of voluntary intoxication when offered to negate the culpability element of knowingly. *See People v. Aragon,* 653 P.2d 715 (Colo. 1982); *People v. Bieber,* 835 P.2d 542, 545 (Colo.App.1992), *aff'd,* 856 P.2d 811 (Colo. 1993). The General Assembly has not altered the statute following this construction. Therefore, we perceive no reason to depart from this settled interpretation. *See Mason v. People,* 932 P.2d 1377 (Colo.1997).

Defendant nevertheless contends that, if, following *Harlan,* the statute does not allow voluntary intoxication evidence to negate the element of knowingly, then it violates his due process rights to present a defense and to trial by jury. Because we find *People v. DelGuidice, supra,* dispositive on this issue, we disagree.

In *People v. DelGuidice,* the supreme court held that a defendant's due process rights were not violated by the predecessor of § 18–1–804(1), which precluded introduction of evidence of voluntary intoxication to negate general intent. The court stated: "The Colorado common law and statutory rule which makes evidence of voluntary intoxication incompetent to disprove general intent when that mental state is an element of a criminal charge is supported by weighty

policy choices about the extent to which drunkenness can excuse criminal responsibility." *People v. DelGuidice, supra*, 199 Colo. at 46, 606 P.2d at 844.

Defendant argues that *DelGuidice* is inapplicable because, when it was decided, intoxication was viewed as an affirmative defense. Defendant asserts that, following the holding of *People v. Harlan* that intoxication is not an affirmative defense, the due process analysis of *DelGuidice* no longer applies because that analysis addressed the defendant's right to an affirmative defense, whereas the current situation involves a defendant's right to present any evidence of voluntary intoxication. We are not persuaded.

*DelGuidice* did not rest on the characterization of intoxication as an affirmative defense. Rather, the court held that it was within the competence of the General Assembly to determine that voluntary intoxication would not excuse crimes of general intent. This analysis is equally applicable here.

We therefore conclude that the trial court did not err in instructing the jury that it should not consider evidence of intoxication in determining whether the prosecution had proved the mental state of knowingly beyond a reasonable doubt. Hence, in a similar evidentiary posture on remand, this instruction may again be given.

### IV.

In view of our disposition reversing defendant's conviction for attempted first degree sexual assault, we need not reach his contentions regarding the constitutionality of the 1998 Colorado Sex Offender Sentencing Act, § 18–1.3–901, et seq., C.R.S.2002.

The judgment of conviction for second degree assault is affirmed. The judgment of conviction for attempted second degree murder, attempted first degree sexual assault, and first degree burglary is reversed, and the case is remanded for a new trial on those charges.

Judge TAUBMAN and Judge NIETO concur.