The PEOPLE of the State of
Colorado, Petitioner,

v.

Vernon L. VANREES, Respondent.

No. 03SC290.

Supreme Court of Colorado,
En Banc.

Dec. 19, 2005.*

* Prior opinion announced Oct. 3, 2005, With-
drawn. Petition for Rehearing Denied. Justice

COATS does not participate.

**404**

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for Respondent.

BENDER, Justice.

## I. INTRODUCTION

We review the court of appeals' decision in *People v. Vanrees*, 80 P.3d 840 (Colo.App. 2003), which held that a criminal defendant need not comply with the pleading requirements of the insanity statute in order to introduce evidence of his mental slowness to contest the culpable mental element of the crime charged. In addition, that court reversed Vanrees's convictions for the crimes requiring the culpable mental state of "knowingly," reasoning that the trial court's instruction given during jury deliberation wrongfully precluded the jury from considering evidence of Vanrees's mental slowness as it related to the crimes requiring the mental state "knowingly."

The People sought certiorari review of the court of appeals' decision, arguing that evidence of a defendant's mental slowness is not admissible to counter the required culpable mental state of the crime charged (mens rea) unless the defendant's "mental slowness" satisfied the threshold set forth in Colorado's affirmative defense of impaired mental condition.[1] Thus, the People argue that because he did not comply with the pleading requirements of the insanity-impaired mental condition statute, evidence of Vanrees's mental slowness had no bearing on whether he acted with the culpable mental state of "knowingly" when he committed the crimes requiring this culpable mental state.

Mental slowness does not fit the statutory definition of "mental disease or defect" un-

---

1. In 1995, the General Assembly combined the defense of not guilty by reason of insanity with the defense of impaired mental condition into the "affirmative defense of not guilty by reason of insanity" in order to "create a unitary process" for handling issues raised by these two defenses. § 16–8–101.3, C.R.S. (2005). The new "insanity" provision includes language substantially the same as the language in the former "impaired mental condition" statute. § 16–8–101.5(1)(b),

C.R.S. (2005); *compare* § 16–8–103.5, C.R.S. (2005). Thus, while it is technically part of the insanity statute, for the sake of clarity, we will refer to the defense that involves "a condition of mind caused by mental disease or defect" as "impaired mental condition."

For the sake of convenience, we refer to the 2005 statutory codification. The same statutes were in effect when the case was tried.

less "mental slowness" rises to the level of a "severely abnormal mental condition[ ] that grossly and demonstrably impair[s] a person's perception or understanding of reality." § 16–8–101.5(2)(b), C.R.S. (2005). We conclude that evidence of mental slowness in this case does not meet the threshold requirements of the affirmative defense of impaired mental condition and that the defendant may introduce relevant evidence of his mental slowness to counter or to contest factually whether he formed the culpable mental state of the crimes charged. Thus, the trial court acted properly by admitting evidence of Vanrees's mental slowness to contest his guilt for the crimes requiring the culpable mental state of "knowingly."

Turning to the issue concerning the instruction given during jury deliberations, we reverse the holding of the court of appeals. We reason that when the trial court informed the jury that it could consider "any evidence, other than intoxication" to determine whether Vanrees possessed the culpable mental state of "knowingly," this directive permitted the jury to consider evidence of Vanrees's mental slowness as to whether he acted "knowingly." Thus, we hold that this supplemental instruction did not preclude the jury from considering his mental slowness.

Hence, we reverse the judgment of the court of appeals and remand this case to that court with directions to return this case to the trial court to reinstate its original judgments of conviction for the following crimes: attempted second degree murder, attempted first degree sexual assault, and first degree burglary.

## II. FACTS AND PROCEEDINGS BELOW

Vanrees was charged with attempted first degree murder, first degree assault, attempted first degree sexual assault, and first degree burglary for allegedly having assaulted a family acquaintance after breaking into her home.

Vanrees worked as an assistant manager at a fast-food restaurant. One evening when his shift ended at 5:00 p.m., he walked to a nearby bar where he drank approximately six beers and three shots of whiskey during a two- to three-hour period. Vanrees then left the bar, walked to a liquor store, purchased three bottles of schnapps, and consumed approximately two and one-half bottles of the schnapps before walking to a second bar. At the second bar, Vanrees drank eight to nine beers and six to seven shots of whiskey before leaving the bar at approximately 9:30 p.m.

Vanrees then walked to the home of J.W., a sixty-six-year-old woman whom he knew. Vanrees's parents had been long-time tenants of J.W.'s parents, but Vanrees and J.W. had not seen each other for several years. J.W. testified that she and Vanrees had never had so much as a conversation with each other in the past and that she had never had any problems with him.

J.W. was watching television in her bedroom when she looked up and saw a naked man standing in the doorway with a small appliance cover over his head. The man was holding a butter knife in one hand and a screwdriver in the other. When J.W. started screaming at the man, he rushed toward her, and the two wrestled. J.W. got the screwdriver and knife away and took the cover off of the man's head. She immediately recognized Vanrees.

When J.W. asked Vanrees what he was doing there, he said, "I came here to kill you." The two exchanged words and then engaged in a physical struggle, during the course of which Vanrees hit J.W. multiple times with a carpet sweeper, asked her to perform oral sex on him, pounded a screwdriver into her body multiple times, and attempted to suffocate her.

Vanrees then told J.W. that he was going to kill himself and J.W. asked if he would first call 911 because she was injured. Vanrees placed the call even though he had earlier told J.W. that he had pulled the telephone wires to the house. After placing the call, Vanrees borrowed a pair of pants from J.W. and asked her not to tell police he had been there. Before he was able to leave, ambulance personnel arrived and shortly thereafter Vanrees was arrested by the police.

Detective James Gavin testified that Vanrees smelled of alcohol and one of the firefighters who had responded to the 911 call testified that Vanrees was drunk. Two days after the incident, J.W. told detective Gavin that Vanrees's eyes were "glazed over" and that he appeared to be "off in another world" when he was at her house. At trial, J.W. described Vanrees's behavior during the incident as "bizarre."

Vanrees testified that he had no recollection of what had occurred between the time he went to the second bar and when he was later handcuffed by police. He stated that he was a high school graduate but that he had always taken special education classes because, according to his own admission, he was "kind of slow." No additional evidence concerning Vanrees's mental slowness was presented.

In closing, defense counsel argued that Vanrees's voluntary intoxication, coupled with his mental slowness, caused him to behave in such a "disorganized, bizarre, and strange" fashion that he necessarily could not have acted with the specific intent or deliberation to commit the crimes charged whose culpable mental state was "intentionally."[2] Defense counsel stated: "What you've heard and seen is a picture of someone who has something very wrong with him. Whose problems combined with alcohol led to J.W.'s night of terror.... [I]t is the combination of what is going on in his mind and how alcohol has affected him ... [I]ntoxication made it so that Mr. Vanrees did not have the ability to have specific intent and deliberation". She

argued that the bizarre nature of Vanrees's behavior was "evidence of the fact that [he did not act] with intent or deliberation" and she asked the jury to "convict [Vanrees] of the lesser [included] offenses."

During deliberation, the jury submitted a question to the trial judge asking how to understand the term "knowingly":

Almost every count includes the term "knowingly."[3] Can mental capacity, "slowness" of an individual, or potential insanity be part of the knowingly definition.

Please provide us a better definition of knowingly.

In response, the judge issued a supplemental written instruction, informing the jury that insanity and impaired mental condition were not issues in the case but that the jury could consider any evidence presented other than intoxication in their deliberations on the culpable mental state "knowingly." The supplemental instruction stated:

The defendant has not entered a plea of not guilty by reason of insanity. Thus, whether the defendant suffered from a severely abnormal mental condition caused by mental disease or defect that grossly and demonstrably impaired his perception or understanding of reality is not an issue for your consideration.

You will not receive any additional instruction regarding the culpable mental state "knowingly," other than that contained in Instructions Nos. 17[4] and 18[5].

2. First degree murder has both a "deliberation" and an "intent" element. The charged offense of first degree assault and the lesser included offense of second degree assault also contain the culpable mental state of "intentionally." First degree burglary has both a "knowingly" and an "intentionally" element.

3. The charged offense of attempted first degree sexual assault contains the mental state of "knowingly." The charged crime of first degree burglary has both a "knowingly" and an "intentional" element. The lesser included offense of second degree murder also has the requisite mental state of "knowingly."

4. Instruction 17 provided definitions of the relevant culpable mental states. With respect to "knowingly," it stated:

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

5. Instruction 18 provided:

Evidence of intoxication should be considered by you in determining whether the prosecution has proven beyond a reasonable doubt the mental states of "with intent" and "after deliberation and with intent."

"Intoxication" as used in this instruction means a disturbance of mental or physical capacities resulting from the introduction of any substance into the body.

In determining whether or not the element of "knowingly" has been proved beyond a reasonable doubt, you may consider *any evidence, other than intoxication, presented in this case, or lack of evidence, that you believe to bear on that element.*

You are reminded that you must consider the instructions as a whole.

(Emphasis added.)

The jury convicted Vanrees of attempted second degree murder, second degree assault, attempted first degree sexual assault, and first degree burglary.

On appeal, Vanrees asserted that the trial court's supplemental instruction erroneously prevented the jury from considering evidence of his "mental slowness" to determine whether the prosecution had proven beyond a reasonable doubt that he possessed the culpable mental state of "knowingly."[6] The court of appeals held that evidence of mental slowness could be introduced without complying with the pleading requirements of the insanity statute and that the supplemental instruction "did not inform the jury that it could consider evidence of [the] defendant's 'mental slowness' and capacity in assessing whether he knowingly committed the crimes charged, but instead simply referred the jury to some original instructions." *Vanrees*, 80 P.3d at 843. Further, by giving the definition of the impaired mental condition aspect of insanity without naming it as such, the court of appeals reasoned that the instruction could have improperly led the jury to conclude that evidence of Vanrees's mental slowness "was not an issue" for its consideration because the jury could have interpreted "mental slow-

ness" as constituting an "abnormal mental condition" within the definition of insanity provided in the supplemental instruction. *Id.* at 843–44. Consequently, the court concluded that the instruction constituted reversible error because it allowed the jury to convict Vanrees "without necessarily finding beyond a reasonable doubt that he was aware that his conduct was practically certain to cause the proscribed results," *id.* at 844, and, in so doing, unconstitutionally lowered the prosecution's burden of proof. Accordingly, the court of appeals reversed those convictions which required the culpable mental state of "knowingly," i.e., attempted second degree murder, attempted first degree sexual assault, and first degree burglary, and remanded the case for a new trial. The court affirmed Vanrees's conviction for second degree assault because it required a mens rea of specific intent. *Id.*

The People sought certiorari review, arguing that the court of appeals erred because evidence of mental slowness is not admissible to contest mens rea unless the threshold requirements of the impaired mental condition statute are met and unless the defendant complied with the pleading requirements of the insanity-impaired mental condition statute.[7]

## III. ANALYSIS

### A. Evidence of Mental Slowness May Be Offered to Negate Mental Culpability Without Entry of an Insanity Plea

We address the second question on certiorari first, beginning with an examination of

---

Evidence of intoxication should not be considered by you in determining whether the prosecution has proven beyond a reasonable doubt the mental state of "knowingly."

6. We note that Vanrees's attorney actually argued during closing that the jury should convict Vanrees of the charged and lesser included offenses with the culpable mental state "knowingly." However, we express no opinion whether the doctrine of invited error, *see People v. Stewart*, 55 P.3d 107, 119–20 (Colo.2002), applies in this case.

7. We note that the People argued the contrary position in the court of appeals that the trial court's instruction which "permitted consideration of the evidence of the defendant's 'slowness,' properly followed the law." Nonetheless,

we granted certiorari in order to address the question of whether a criminal defendant must comply with the pleading requirements of the insanity statute in order to introduce evidence of his mental slowness to challenge the culpable mental state of a crime charged.

We granted certiorari on the following issues:
   (1) Whether the court of appeals erred in holding that the trial court's supplemental instruction improperly excluded evidence of defendant's "mental slowness."
   (2) Whether a defendant who fails to plead the statutory affirmative defense of impaired mental condition is entitled to introduce evidence of "mental slowness" to negate the culpable mental state for a criminal charge.

the impaired mental condition affirmative defense contained in Colorado's insanity statute.

Impaired mental condition is defined as "a condition of mind caused by *mental disease or defect* that prevented the person from forming a culpable mental state that is an essential element of the crime charged..." § 16–8–101.5(1)(b), C.R.S. (2005) (emphasis added). "Mental disease or defect" is defined as including "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality" that are not caused by drug or alcohol use or manifested only through repeated criminal conduct. § 16–8–101.5(2)(b), C.R.S. (2005).

A defendant seeking to introduce evidence raising the affirmative defense of impaired mental condition must comply with the statutory pleading requirements of the affirmative defense of "not guilty by reason of insanity." § 16–8–103(1.5), C.R.S. (2005). This defense must be raised at the time of arraignment, or at any time before trial when the court permits it for good cause shown. § 16–8–103(1.5)(a), C.R.S. (2005). Once raised, a court-ordered mental health examination is automatically triggered by the entry of an insanity plea. § 16–8–105.5, C.R.S. (2005). Thereafter, the burden of proof is on the People to prove the defendant not mentally impaired beyond a reasonable doubt. *Id.*

Although insanity pleas, including those based upon an impaired mental condition theory, must comply with these statutory pleading requirements, there is nothing within Colorado's statutory insanity framework indicating that our General Assembly intended to create an "all or nothing" insanity defense that applies in all cases where the defendant presents evidence challenging the culpable mental state element of the crime charged. *Compare People v. Carpenter,* 464 Mich. 223, 627 N.W.2d 276, 283 (2001) (noting that the Michigan legislature created an "all or nothing" insanity defense). Rather, Colorado's insanity statute created a "unitary process for hearing the issues raised" by the

combined affirmative defense of "not guilty by reason of insanity" (insanity and impaired mental condition), and a not guilty plea on the merits. *See* § 16–8–101.3, C.R.S. (2005); *see also* 16–8–104.5, C.R.S. (2005).

■ This statute envisions three possible jury findings in a unitary trial: (1) a jury could find a defendant insane pursuant to the insanity statute; (2) a jury could find that the defendant suffered from an impaired mental condition pursuant to the insanity statute[8]; (3) if the defendant is neither insane nor mentally impaired, then the jury must decide the defendant's guilt on the merits, i.e., whether the prosecution has met its burden to prove that the defendant in fact committed the crime charged, which, of course, includes the required culpable mental state. *See Hendershott v. People,* 653 P.2d 385, 390 (1982).

■ One version of the third scenario (where he is neither insane nor mentally impaired) occurs if the defendant suffers from a mental health problem that he does not claim rises to the statutory level of an "abnormal mental condition[ ] that grossly and demonstrably impair[s] [his] perception or understanding of reality." Our court of appeals addressed just such a situation when it held that the defendant could introduce evidence that he was a "slow thinker" to show that he did not in fact possess the required culpable mental state without complying with the pleading requirements of the insanity statute. *People v. Requejo,* 919 P.2d 874 (Colo.App.1996), *cert. denied* (Oct. 15, 1996). In that case, rather than presenting evidence of a "severely abnormal" mental condition, "the defendant offered proof that he was mildly mentally retarded," though "competent, sane, and not mentally ill." *Id.* at 876. The court distinguished impaired mental condition from mental slowness and held that "if a defendant's condition of mind is so abnormal as to render him incapable of accurately comprehending his surrounding circumstances, he or she is required to plead the statutory [insanity-impaired mental con-

8. Under either of these first two scenarios, the jury finds the defendant "not guilty by reason of insanity" and he is committed to the custody of

the department of human services for psychiatric care. § 16–8–105.5(4), C.R.S. (2005).

dition] defense in order to present evidence to that effect." *Id.* Because the defendant did not claim that he was unable to form the required mens rea, mental condition evidence was properly admitted. *Id.*

■ We find the court of appeals reasoning in *Requejo* instructive and apply it here. Vanrees testified that he had taken special education classes throughout the course of his schooling and admitted that he was "kind of slow." However, as in *Requejo,* the defense did not introduce evidence to support a claim that Vanrees's mental slowness constituted a "mental disease or defect," consistent with this term's statutory definition. Like the evidence of Requejo's mild mental retardation, defense counsel here did not claim that Vanrees's mental slowness was "severely abnormal" or that it "grossly and demonstrably impair[ed] [his] perception or understanding of reality." As in *Requejo,* evidence of Vanrees's mental slowness is not encompassed within the statutory definition of impaired mental condition. Hence, we hold that evidence of Vanrees's mental slowness did not satisfy the threshold requirements of the affirmative defense of impaired mental condition and Vanrees did not have to comply with the pleading requirements of that statute.

■ Returning to discuss the third scenario of Colorado's unitary trial process, (where the defendant is neither insane nor mentally impaired), the defendant always possesses the constitutional right to present relevant evidence to contest whether he factually formed the culpable mental state of the crime charged. "It is axiomatic that an accused is presumed innocent of … every element of the crime including the requisite [culpable mental state]," *Hendershott,* 653 P.2d at 390; *see also People v. Cornelison,* 192 Colo. 337, 341, 559 P.2d 1102, 1105 (1977). Prohibiting a defendant from contesting or disproving the required culpable mental state would create an "impermissible presumption of culpability" which would violate a defendant's due process rights and unconstitutionally "render the prosecution's evidence on that issue uncontestable as a matter of law." *Hendershott,* 653 P.2d at 391. Thus, based upon a criminal defendant's

constitutional right to due process, the defendant's "mental slowness" may be considered as factual evidence to support the argument that he lacked the required culpable mental state. An accused may contest or counter factually the required mental state even though he may possess the capacity to form it.

To summarize, mental slowness is not a "mental disease or defect" as these terms are defined by the legislature. We conclude that evidence of mental slowness in this case does not meet the threshold requirements of the affirmative defense of impaired mental condition and that the defendant may introduce relevant evidence of mental slowness to counter or to contest factually whether he formed the culpable mental state of the crimes charged.

### B. The Supplemental Jury Instruction Properly Informed the Jury that They Could Consider Evidence of "Mental Slowness" in Their Deliberations on the Culpable Mental State "Knowingly"

■ We turn next to the question of whether the trial court's instruction given during jury deliberations permitted the jury to consider evidence of Vanrees's mental slowness as to whether he possessed the requisite culpable mental state "knowingly."

In response to the jury's question submitted during deliberations regarding whether evidence of "mental slowness" could be considered on the issue of whether Vanrees acted "knowingly," the trial court issued a supplemental written instruction stating that the jury could consider any evidence presented other than intoxication in their deliberations on the culpable mental state of "knowingly" and pointing out that insanity was not at issue:

The defendant has not entered a plea of not guilty by reason of insanity. Thus, whether the defendant suffered from a severely abnormal mental condition caused by mental disease or defect that grossly and demonstrably impaired his perception or understanding of reality is not an issue for your consideration.

You will not receive any additional instruction regarding the culpable mental state "knowingly," other than that contained in Instructions Nos. 17 and 18.

In determining whether or not the element of "knowingly" has been proved beyond a reasonable doubt, you may consider *any evidence, other than intoxication, presented in this case, or lack of evidence, that you believe to bear on that element.*

You are reminded that you must consider the instructions as a whole.

(Emphasis added.)

■■■■■ The court of appeals reasoned that this instruction, could have caused the jury to believe that "mental slowness" constituted an "abnormal mental condition." It read the first paragraph of this instruction as precluding the jury from considering evidence of Vanrees's mental slowness on the issue of whether he acted knowingly. *Vanrees,* 80 P.3d at 844. While we recognize that such a reading of the first paragraph of the instruction is possible, the trial court's stated definition of the impaired mental condition aspect of insanity was technically correct. We must not view the first paragraph of this instruction in isolation. Jury instructions must be read as a whole, and if, when so read, they adequately inform the jury of the law, there is no reversible error. *People v. Harlan,* 8 P.3d 448, 472 (Colo.2000). Thus, one instruction may cure a possible ambiguity created by another instruction. *See People v. Garcia,* 28 P.3d 340, 345 n. 3 (Colo.2001). Analogously, we may presume that one section of an instruction may cure ambiguity created by another section within that same instruction.

With these principles in mind, we note that the third paragraph of the supplemental instruction expressly provided that the jury could consider "*any evidence,* other than intoxication, presented in this case, or lack of evidence," (emphasis added), in determining whether Vanrees acted "knowingly." Because the jury was instructed that it could consider "any evidence," we conclude that paragraph three of the supplemental instruction cured any ambiguity created by the trial court's explanation of insanity in paragraph one. In addition, the supplemental instruction referred the jury to the definition of

"knowingly" provided in the court's original instructions. Instruction 17 properly defined "knowingly," and, because it required that the defendant be "aware" of his conduct or of the result of his conduct, a reasonable jury could necessarily have understood that it was to consider the defendant's "mental slowness" in determining the degree of his mental awareness. Hence, we conclude that there was no error in the trial court's supplemental instruction.

## V. CONCLUSION

For the reasons stated, we reverse the judgment of the court of appeals and remand this case to that court with directions to return this case to the trial court to reinstate the judgments of conviction for the following crimes; attempted second degree murder, attempted first degree sexual assault, and first degree burglary.

COATS, J., did not participate.