The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James WYLIE, Defendant–Appellant.

No. 07CA2324.

Colorado Court of Appeals, Div. II.

Sept. 2, 2010.

As Modified on Denial of Rehearing Nov. 4, 2010.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

Defendant, James Wylie, appeals the judgment of conviction entered on jury verdicts finding him guilty of four counts of second degree assault. He also appeals the sentence imposed by the trial court. We affirm.

## I. Background

On three separate occasions while incarcerated at the Colorado State Penitentiary, defendant assaulted correctional officers using feces and urine. During two of the assaults, defendant threw urine and feces at the officers and, during the third assault, defendant sprayed the officers with a mixture of urine, feces, and water. Defendant was charged with four counts of second degree assault—in custody—bodily fluids under section 18–3–203(1)(f.5), C.R.S.2009.

Defendant pled not guilty by reason of insanity under section 16–8–101.5(1)(b), C.R.S.2009. Following trial, a jury rejected that defense and found him guilty of four counts of assault. He was sentenced to four consecutive ten-year prison terms to be served consecutively to the sentence he was serving at the time of the assaults.

## II. Jury Instructions

At trial, defendant argued that he did not have the culpable mental state required by section 18–3–203(1)(f.5) at the time of the attacks due to his impaired mental condition. He now contends that the trial court erred in refusing to give his tendered jury instruction, which stated that the jury could consider evidence of his mental illness to determine whether he actually had the requisite culpable mental state for assault at the time of the

attacks. We disagree with his contention on appeal.

 We review jury instructions de novo to determine whether the instructions as a whole adequately informed the jury of the governing law. *People v. Whittiker*, 181 P.3d 264, 276 (Colo.App.2006). We review for an abuse of discretion the trial court's decision to provide the jury with additional written instructions that properly state the law and fairly cover issues presented at trial. *People v. Renfro*, 117 P.3d 43, 48 (Colo.App. 2004). On appeal, we must read the instructions as a whole, and must presume that the jurors understood and followed them, absent evidence to the contrary. *People v. Moody*, 676 P.2d 691, 697 (Colo.1984); *People v. Asberry*, 172 P.3d 927, 933 (Colo.App.2007).

 A defendant cannot be held criminally responsible for his or her actions if a mental illness or insanity at the time of the crime prevented formation of the requisite culpable mental state. *Hendershott v. People*, 653 P.2d 385, 390–92 (Colo.1982). A defendant is insane for purposes of the affirmative defense of not guilty by reason of insanity if the defendant "suffered from a condition of mind caused by mental disease or defect that prevented the [defendant] from forming a culpable mental state that is an essential element of a crime charged." § 16–8–101.5(1)(b), C.R.S.2009. Even where evidence of a defendant's mental slowness does not reach the threshold requirements of the affirmative defense of not guilty by reason of insanity, the defendant may still introduce such evidence to factually counter or contest whether the defendant formed the requisite mental state. *People v. Vanrees*, 125 P.3d 403, 405 (Colo.2005).

The assault statute, under which defendant was convicted, states:

A person commits the crime of assault in the second degree if: ... [w]hile lawfully confined in a detention facility within this state, a person with intent to infect, injure, harm, harass, annoy, threaten, or alarm a person in a detention facility whom the actor knows or reasonably should know to be an employee of a detention facility, causes such employee to come into contact with ... urine [or] feces ... by any means, including but not limited to throwing, tossing, or expelling such fluid or material.

§ 18–3–203(1)(f.5)(I), C.R.S.2009.

Looking, as we must, at the jury instructions as a whole, we see that the trial court instructed the jury as follows:

- Instruction no. 4 set forth defendant's theory of the case, namely that he was prevented from forming the requisite culpable mental state due to his mental illness and the nature of his confinement.
- Instruction no. 6 stated that the jury was permitted to consider the sworn testimony of all witnesses and the exhibits presented in order to reach a verdict.
- Instruction no. 15 defined the culpable mental state, and stated that, to convict defendant, the jury was required to find that he had the requisite culpable mental state at the time of the assaults.
- Instruction no. 16 stated that defendant could not be held criminally responsible for the assaults if an impaired mental condition prevented him from forming the requisite culpable mental state.
- Instruction no. 16 further stated that the prosecution had the burden to disprove defendant's defense of impaired mental condition.
- Instruction no. 18 stated that "impaired mental condition" is defined as "a condition of mind caused by mental disease or defect that prevents [defendant] from forming the culpable mental state that is an essential element of any crime charged."

Defendant's proposed instruction stated:

If you conclude [defendant] suffered from a mental illness but conclude that the mental illness suffered by [defendant] does not meet the requirements of the affirmative defense of impaired mental condition, you may still consider his mental illness as relevant evidence as to whether he formed the culpable mental state of the crimes charged.

We note that this defense should have been referred to as "the affirmative defense of not guilty by reason of insanity," and not

as "the affirmative defense of impaired mental condition." *See People v. Garcia*, 113 P.3d 775, 778 n.2 (Colo. 2005) ("Because, in 1995, the General Assembly incorporated the defense of 'impaired mental condition' into the defense of 'insanity,' ... the trial court mischaracterized this defense as 'impaired mental condition.' "); *see also* § 16–8–101.3, C.R.S. 2010.

In any event, we conclude this instruction was cumulative to those that were given, and that those instructions accurately informed the jury of the governing law.

We are unpersuaded by defendant's citation to *Vanrees*. In that case, the trial court had given a jury instruction that essentially told the jury that an issue related to mens rea was "not an issue for [the jury's] consideration." 125 P.3d at 406. No such language appears in the instructions given here, and we see no reasonable possibility that the jury could have interpreted the instructions that were given to preclude it from considering defendant's mental condition in determining whether he formed the culpable mental state necessary for conviction of the charged offenses. Nor do we agree that the instructions would have led the jury to conclude that the mental condition evidence was relevant only to the affirmative defense.

Moreover, defense counsel argued to the jury that the prosecutor had failed to prove beyond a reasonable doubt that defendant's actions were voluntary and that defendant had the requisite culpable mental state. Counsel asked the jury to consider evidence associated with defendant's mental state to determine whether he had the culpable mental state, and provided specific examples of defendant's conduct that he argued demonstrated defendant's inability to form the culpable mental state at the time of the crimes charged. Thus, defendant was not impeded in his ability to convey to the jury his theory of defense.

We therefore conclude the trial court did not err in declining defendant's proffered instruction.

### III. Sentencing Aggravator

■ Defendant further contends the trial court erred in applying section 18–1.3– 401(8)(a)(IV), C.R.S.2009, to enhance his sentence. We perceive no error.

■ Because defendant did not raise this issue in the trial court, we review for plain error. *People v. Miller*, 113 P.3d 743, 749–50 (Colo.2005). Plain error addresses error that is obvious and substantial, and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *Id.* at 750. To the extent defendant's argument requires us to interpret statutory provisions, we do so de novo. *People v. Benavidez*, 222 P.3d 391, 393 (Colo. App.2009).

Under section 18–1.3–401(8)(a)(IV), if a defendant was incarcerated in any correctional institution as a convicted felon when he or she committed the crime of conviction, a sentencing court is required to sentence the defendant to a term of incarceration equaling at least the midpoint and not greater than twice the maximum term authorized in the presumptive sentencing range for the crime.

In *People v. Andrews*, 871 P.2d 1199 (Colo. 1994), the supreme court concluded that the sentence enhancer found in section 18–1.3– 401(8)(a)(IV) was inapplicable to the crime of class 3 felony escape for two reasons. First, the statute defining felony escape included as an element that the escape must have occurred while the defendant was in custody or confinement following conviction of a felony. The enhancer provided that escape was an extraordinary aggravating circumstance when defendant was a felon who escaped from a correctional institution, and, in essence, required that defendant be sentenced as if convicted of a class 2 felony. The supreme court looked at the overall statutory scheme and concluded that application of the sentence enhancer would require a defendant convicted of the class 3 felony to be sentenced as for a class 2 felony, and would "effectively render meaningless the classification of the felony as class 3, since in each and every case an enhanced sentence would be imposed upon the defendant." 871 P.2d at 1202.

These considerations are not present in the statutes involved here. Application of the

sentence enhancement provisions of section 18–1.3–401(8)(a)(IV) would not have an effect, contrary to the legislative intent, of raising the class of felony for which defendant here was convicted.

Second, the *Andrews* court noted that the elemental statutes under which the defendant there was charged provided for specific sentences, and also provided that punishment for the offenses would run consecutively to the punishment for the felony that led to incarceration. The division in *People v. Willcoxon,* 80 P.3d 817 (Colo.App.2002), relied on this latter rationale to conclude that the sentence aggravator in section 18–1.3–401(8)(a)(IV) did not apply to the crime of second degree assault as defined in section 18–3–203(1)(f), C.R.S.2009.

This second rationale is also inapplicable here. Defendant was charged under section 18–3–203(1)(f.5), not under section 18–3–203(1)(f), as was the defendant in *Willcoxon.* Unlike the statutes at issue in *Andrews* and *Willcoxon,* the elemental statute under which defendant was charged here does not contain specific sentencing requirements that would supersede the provisions of the sentencing statute. *Cf. People v. Nitz,* 104 P.3d 240, 243 (Colo.App.2004) (concluding that *Andrews* and *Willcoxon* are not dispositive where there was no specific aggravated punishment provided for in the elemental statute, and applying general sentence enhancer where (1) there was no specific aggravated punishment provided in the elemental statute, and (2) the enhancer would only apply to defendants convicted of a felony under the statute and not to others convicted of a lesser crime).

Thus, we conclude the trial court did not erroneously apply the general sentence enhancer in section 18–1.3–401(8)(a)(IV) to defendant's assault conviction under section 18–3–203(1)(f.5).

## IV. Equal Protection

Defendant argues that the sentence imposed denied him equal protection under the law. We disagree.

Our review of the record shows that defendant did not preserve this issue by raising it in the trial court. Assuming, without deciding, that appellate review is available as to this issue, we review the trial court's sentenc-

ing determinations for plain error. *Miller,* 113 P.3d at 748–50; *cf. People v. Cagle,* 751 P.2d 614, 619 (Colo.1988) (it is axiomatic that this court will not consider constitutional issues raised for the first time on appeal); *see also People v. Tillery,* 231 P.3d 36, 47 (Colo. App.2009)(*cert. granted,* 2010 WL 2026599 May 24, 2010) (noting tension between *Miller* and *Cagle* holdings regarding appellate review of unpreserved constitutional issues).

Where different statutes proscribe dissimilar forms of conduct, and there is a rational basis for disparate sanctions, such statutes do not offend equal protection guarantees. *People v. Sparks,* 914 P.2d 544, 546 (Colo.App.1996).

Statutory classification of crimes must be based on differences that are real and reasonably related to the purpose of the legislation. *People v. Nguyen,* 900 P.2d 37, 40 (Colo.1995). A sentencing scheme that causes an offender who acts with less culpable intent and who causes a less grievous result to receive a greater penalty is unconstitutional. *Id.*

Assuming, without deciding, that an unpreserved equal protection claim could be considered obvious so as to constitute plain error, we are not persuaded by defendant's argument that his sentence is unconstitutional because it provides for a harsher penalty than would have been imposed had defendant been convicted of assault by what he argues is a more harmful and serious method. The legislature has rationally determined that the methods employed by defendant here are serious and capable of inflicting significant harm, and we conclude there was a rational basis for the statutory scheme prescribing the penalty for defendant's crimes. *See* § 18–3–203(1)(f.5)(II), C.R.S.2009 (expressing legislature's concern with transmission of communicable diseases resulting from attack utilizing bodily fluids and potential costs of victims' treatment).

The judgment and sentence are affirmed.

Judge CASEBOLT and Judge FURMAN concur.