**Wayne Michael KLINCK, Jr., Petitioner,**

v.

**The DISTRICT COURT OF the EIGHTEENTH JUDICIAL DISTRICT, and the Honorable Michael L. Bieda, one of the Judges thereof, Respondents.**

**No. 94SA32.**

Supreme Court of Colorado,
En Banc.

June 27, 1994.

Douglas G. McKinnon, Arnold K. Miller, Littleton, for petitioner.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., General Legal Services Section, Denver, for respondents.

Justice LOHR delivered the Opinion of the Court.

Wayne Michael Klinck, Jr. (Klinck) brings this original proceeding pursuant to C.A.R. 21, seeking a writ of mandamus directing a judge of the District Court of the Eighteenth Judicial District to recuse himself from presiding over a pending criminal case in which Klinck is the defendant.[1] Klinck filed a motion and affidavits in district court seeking disqualification of the judge and alleging that at the conclusion of a bond hearing, the court made comments from which it could reasonably be inferred that the court was biased or prejudiced against Klinck or his counsel. The judge denied the motion. Klinck then initiated this original proceeding, and we issued a rule to show cause why the district court judge should not recuse himself. We agree with Klinck that the judge applied an improper standard to evaluate the legal sufficiency of Klinck's motion and affidavits, and that under the proper standard those documents are legally sufficient to require recusal. We therefore make the rule absolute.

I.

Klinck is a defendant in a pending criminal action before the respondent district court.

1. The petition names as respondents in this case "The District Court of the Eighteenth Judicial District, and The Honorable Michael L. Bieda, one of the Judges thereto."

He is charged with first degree assault against his wife. Klinck is represented in that case by attorneys Douglas G. McKinnon (McKinnon) and Arnold K. Miller (Miller). On December 30, 1993, the prosecution filed a motion in district court, alleging in part that at Children's Hospital, Klinck violated a court order requiring him to stay at least 1500 feet from his wife. The prosecution requested that Klinck's bond be increased from $100,000 to $200,000 "pending further order of the Court upon hearing on the merits of the People's motion." The court subsequently set Klinck's bond "in the amount of $200,000 pending further hearing on conditions of bond herein." Thereafter, the case was assigned to the respondent judge, Michael L. Bieda. On January 11, 1994, Judge Bieda held a hearing to determine the amount of Klinck's bond.

From the record, it is apparent that counsel for Klinck interpreted the language in the order that set the bond "pending further hearing on conditions of bond herein" to mean that the bond was only conditionally set at $200,000 and that the purpose of the hearing was to determine whether bond should be fixed at that amount. Accordingly, at the bond hearing, McKinnon argued that the burden should be upon the prosecution to show that the bond amount should be *increased* from $100,000 to $200,000. The court, however, determined that the burden was on the defendant to "establish a reduction in bond."

McKinnon then argued that the verified motion supporting the prosecution's original request to increase the bond to $200,000 contained two misstatements of fact that could be ascertained by reference to the court's records. After so arguing, McKinnon moved to strike the verified motion, stating: "And knowing that, at this time, Your Honor, we would move to strike the Verified Motion because it is not factually correct. And the bond was increased on the basis of the information contained in that Affidavit, Your Honor." After McKinnon made this motion, the following colloquy ensued:

THE COURT: All right. Anything else?

MR. MCKINNON: Yes. Well, I'd like the court—if the Court will, if counsel seeks to argue against that then we would proceed if we have to.

THE COURT: What do you mean, you would proceed?

MR. MCKINNON: Well, we have a witness to call, Your Honor. It's my understanding that the purpose of this Affidavit was to show that in fact an alleged incident took place at Children's Hospital. That's what all of the—the attachments are all about.

THE COURT: I've read them, yes.

MR. MCKINNON: And what I'm suggesting, Your Honor, if in fact this Court found that this Affidavit was inaccurate; that it did not contain information that was factually correct, then I think that this Court has a obligation to grant our Motion to Dismiss Verified Motion and reduce the bond to $100,000.

THE COURT: Obligation?

MR. MCKINNON: Yes.

THE COURT: All right. Well, are you finished now arguing on the Motion to Reduce the Bond?

MR. MCKINNON: That part of the motion I'm finished with. In other words, Your Honor, I think that you—

THE COURT: Let me just stop you here. I'm really confused as to what you're doing here. I've indicated by my previous ruling that you have the burden of going forward to reduce the bond, and I'm going to give you that opportunity. Now, I'm, asking you if you have anything else to present. If your answer is yes, then I'm going to turn to the People and ask them to present their arguments in terms of retaining the bond—

MR. MCKINNON: I see—

THE COURT: Don't interrupt me. Very, very simple procedure. I don't know if you're trying to complicate it or confuse me here. I'm trying to keep it

simple. If you have anything else to present on the issue of bond at this time, I'm allowing you the opportunity to do so.

MR. MCKINNON: Your Honor—

THE COURT: That includes arguments, testimony, witnesses, whatever it is you want to produce, now is the time, counsel.

MR. MCKINNON: Your Honor, I've been doing this for almost 40 years, and I never had the Court suggest I'm trying to confuse it. And I resent that.

THE COURT: I don't care if you resent it.

MR. MCKINNON: I want the record to reflect it.

THE COURT: Let the record reflect. Let it also reflect, if you don't quit talking back to me we're going to have a lot more problems.

After hearing testimony, the court ruled that the order setting Klinck's bond at $200,000 was properly entered and that Klinck had provided no evidence to persuade the court to modify that order. The court then turned to a motion to continue, previously made by Klinck and set to be heard at the bond reduction hearing:

THE COURT: ... With regard to the Motion to Continue, counsel, how long do you need to argue that motion?

MR. MCKINNON: Based on the Court's ruling, a very short time, Your Honor, 15, 20 minutes max.

THE COURT: Well, I don't have 15 or 20 minutes. We've got another matter set here. It should have been started sometime [sic] ago. So your time, really, that was allocated for this matter today is up.

I'll go ahead and reset you on your Motion to continue. We'll try to find you another date. We'll just have to learn— you'll have to learn to try and get your matter completed in the time you asked for and allocated.

MR. MCKINNON: Your Honor, it wasn't just mine. The district attorney also had something to say in the case that went to my time that I understood was mine.

THE COURT: The time that we set this for is both sides. Normally in a court proceeding we have two parties. And both parties have an opportunity to present arguments and then evidence. And that was the—under that assumption that this matter had been set. We've been at it for an hour and-a-half. It had originally been set for an hour, for the record, and the Court would not allocate any time for the record.

MR. MCKINNON: We were here at 2 o'clock and we started much after 2 o'clock.

THE COURT: 2:30. It's five to 4:00. Do you wish to argue any further with the Court at this time?

MR. MCKINNON: Nothing.

THE COURT: Good. You're excused.

The events that followed provide the principal basis for the motion for disqualification of Judge Bieda, filed by Klinck on January 13, 1994, two days after conclusion of the bond reduction hearing. In that motion, Klinck alleges that at the conclusion of the hearing, Judge Bieda motioned for Miller, McKinnon's co-counsel, to approach the bench and stated to Miller, "don't you ever rub my nose in the fact that my court proceedings ran thirty minutes late, I gave you more time than you were allotted," and that the judge also told Miller, "if you do not keep co-counsel (McKinnon) on a short leash, you will have problems in this case." In the motion for disqualification, Klinck alleged that the latter remark, concerning the "short leash," showed prejudice or bent of mind with regard to Klinck or his counsel. The motion was verified by attorney Miller and was accompanied by two supporting affidavits, one by attorney Miller and the other by a woman who testified for Klinck at the hearing. Judge Bieda denied the motion. This original proceeding followed.

## II.

### A.

The relevant procedural rules and statutes provide the starting point for our analysis.

The Colorado Rules of Criminal Procedure state:

#### (b) Substitution of Judges.

(1) Within ten days after a case has been assigned to a court, a motion, verified and supported by affidavits of at least two credible persons not related to the defendant, may be filed with the court and served on the opposing party to have a substitution of the judge. Said motion may be filed after the ten-day period only if good cause is shown to the court why it was not filed within the original ten-day period. The motion shall be based on the following grounds:

. . . .

(IV) The judge is in any way interested or prejudiced with respect to the case, the parties, or counsel.

. . . .

(3) . . . If the motion and supporting affidavits state facts showing grounds for disqualification, the judge shall immediately enter an order disqualifying himself or herself.

Crim.P. 21(b)(1)(IV)(3).

The Colorado Revised Statutes include the following provision:

(1) A judge of a court of record shall be disqualified to hear or try a case if:

. . . .

(d) He is in any way interested or prejudiced with respect to the case, the parties, or counsel.

§ 16–6–201(1)(d), 8A C.R.S. (1986).

■ In the past, we have stated that " '[b]asic to our system of justice is the precept that a judge must be free of all taint of bias and partiality.' " *Estep v. Hardeman,* 705 P.2d 523, 525 (Colo.1985) (quoting *People v. District Court,* 192 Colo. 503, 507, 560 P.2d 828, 831 (1977)). Both the actuality and appearance of fairness must be considered, for the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would the actual presence of bias or prejudice. *People v. Botham,* 629 P.2d 589, 595 (Colo.1981) (citing 1 *ABA Standards for Criminal Justice* standard 6–1.7, commentary at 6.20 (2d ed. 1980)).

■ When determining whether to grant a motion for disqualification, a judge must consider the timeliness of the motion and supporting affidavits. *Estep,* 705 P.2d at 526. In the present case, the timeliness of Klinck's motion and affidavits is not disputed. A judge must also consider the legal sufficiency of the motion and affidavits. *Id.* Those documents are legally sufficient if they " 'state facts from which it may reasonably be inferred that the judge has bias or prejudice that will prevent him from dealing fairly with the defendant.' " *Id.* (quoting *People v. Botham,* 629 P.2d at 595).

As indicated above, the Colorado Rules of Criminal Procedure and the Colorado Revised Statutes include prejudice against counsel as grounds for disqualification. Crim.P. 21(b)(1)(IV); § 16–6–201(1)(d), 8A C.R.S. (1986). Disqualification may be required when "the judge's manifestation of hostility or ill will [towards counsel] is apparent from the motion and affidavits and indicates the absence of the impartiality required for a fair trial." *Brewster v. District Court,* 811 P.2d 812, 814 (Colo.1991).

■ When evaluating the legal sufficiency of a motion for disqualification and the accompanying affidavits, a court must accept the facts alleged in those documents as true and thus may not pass upon their truth or falsity. *Estep,* 705 P.2d at 526; *Botham,* 629 P.2d at 595. Although the court must determine whether the motion and affidavits set forth facts sufficient to require disqualification, *Estep,* 705 P.2d at 526, the affidavits need not contain every essential fact establishing the judge's prejudice. Rather, it is sufficient if the affidavits verify the facts alleged in the motion. *Estep,* 705 P.2d at 526; *Botham,* 629 P.2d at 595.

Accepting the facts asserted in the motion and affidavits as true means that a judge

"must confine his analysis to the four corners of the motion and supporting affidavits, and then determine as a matter of law whether they allege legally sufficient facts for disqualification." *Brewster*, 811 P.2d at 814 (quoting *S.S. v. Wakefield*, 764 P.2d 70, 73 (Colo. 1988)). In regard to this requirement, we have stated:

"The change of judge is conditioned, not upon the actual fact of his prejudice, but upon the imputation of it. The facts set forth in the recusation must, for the purposes of the motion, be accepted as true, notwithstanding they may be known to the judge and all mankind to be false. The whole matter is left with the conscience of the petitioner and affiants, and when affidavits fulfilling the requirements ... are presented, the change must be made, and the truth of the matter is not open to question. If an offense be committed in verifying and presenting the alleged facts, the perpetrators thereof may, perhaps, be punished under some provision of our law, but the courts, in considering the sufficiency of the application for a change of judge, can neither reject the pleading, nor disregard the facts alleged therein. They can only apply the law and test thereby the sufficiency of the facts alleged. The finding in such matter is a finding of law, and not of fact ... Therefore, the finding of the trial court in such case can have no bearing upon the issue when presented to a higher tribunal...."

*People v. District Court*, 192 Colo. at 509, 560 P.2d at 832 (quoting *People ex rel. Burke v. District Court*, 60 Colo. 1, 8–9, 152 P. 149, 152 (1915)).

In the present case, Judge Bieda, in ruling on the motion for disqualification, indicated that he was aware of the requirement that the affidavits be taken at face value. However, immediately after acknowledging this requirement, Judge Bieda stated that he considered not only the facts alleged in the affidavits but also "all of the record and the circumstances of this case." In addition, the judge made a point of correcting certain matters in Klinck's motion that he found to be incorrect.

The judge first indicated that his ruling on the motion for disqualification was based upon his review of the motion, the affidavits, the file, the pleadings, the minute orders, the record of the bond hearing, and the court reporter's notes. The judge asserted that he had no personal knowledge of McKinnon, Miller, or Klinck and therefore had no reason to be biased from past contacts with these persons. The judge disputed the assertion in the affidavit that he had *increased* Klinck's bond to $200,000. He corrected an inaccuracy in the motion, noting that he did not say, "Counsel, I do not understand what you are saying. Are you trying to confuse this Court, because I do not appreciate that." The judge noted: "[I]n fact, what the Court did say is that, 'I don't know if you are trying to complicate it or confuse me here.' I never said anything about appreciating, not appreciating, simply indicated that the Court is trying to keep this matter as simple as possible."

The judge also discussed at length the reasons for reprimanding McKinnon, describing how in his view McKinnon was "rude, discourteous, and disrespectful" during the colloquy quoted above. The judge also stated his opinion that the motion for disqualification was a ploy to use counsel's disrespect "to get the judge to disqualify himself" and "to gain a continuance through the back door, knowing full-well that one continuance has already been granted in this matter." The judge then stated that "the record and the evidence taken as a whole" did not constitute a sufficient basis for disqualification.

It is obvious that the court did not confine its consideration to the four corners of the motion and affidavits or take the facts therein as true. Counsel for the respondents contend, however, that although the factual statements in the motion must be taken as true, "the record must be reviewed as a whole." As support for this contention, they cite *People v. Drake*, 748 P.2d 1237 (Colo. 1988). *Drake* is inapposite to the present case, however, because the relevant issue in *Drake* was whether the trial judge should have voluntarily recused himself under

Crim.P. 21(b)(2).[2] *Id.* at 1248–49. Because no motion or affidavits were involved in *Drake,* this court was of necessity required to review the "record as a whole." *Id.* at 1249. We conclude, therefore, that the trial court in the present case failed to apply the proper standard to review the legal sufficiency of the motion for disqualification and the accompanying affidavits.

### B.

 Despite this error on the part of the trial court, the legal sufficiency of the motion and affidavits is subject to independent review by this court. *Smith v. District Court,* 629 P.2d 1055, 1056 (Colo.1981). For purposes of our review, we also must take the facts asserted in the motion and affidavits as true. *Estep,* 705 P.2d at 526 (denials or explanations by the respondent judge cannot be considered by this court in evaluating motions to disqualify); *Carr v. Barnes,* 196 Colo. 70, 72, 580 P.2d 803, 804 (1978) ("Although many of the asserted facts have been denied or controverted by the respondent judge, we must take them at face value for purposes of this review."); *People v. District Court,* 192 Colo. at 509 n. 2, 560 P.2d at 832 n. 2 (facts stated in affidavits and motion must be taken as true for this proceeding and judge's denial of prejudice and his counteraffidavit contesting the allegations may not be considered).

 Klinck's motion for disqualification, verified by Miller, contained the following statements:

4. During the hearing, Defendant's attorney Douglas G. McKinnon was asserting the Defendants [sic] position on the District Attorney's verified motion and its contents, when in the middle of Mr. McKinnon's statements, Judge Bieda interrupted Mr. McKinnon and stated, "counsel, I do not understand what you are saying, are you trying to confuse this court, because I do not appreciate that."

Mr. McKinnon responded that he was not trying to confuse the Court, and that in 40 years of practice has never been accused by any Judge of trying to confuse a court.

5. At the conclusion of the hearing, co-counsel, Arnold K. Miller was trying to read the Court's file when Judge Bieda motioned for Mr. Miller to approach the bench, at which time Judge Bieda stated, "don't you ever rub my nose into the fact that my court proceedings ran thirty minutes late, I gave you more time than you were allotted."

6. While Mr. Miller was at the bench, Judge Bieda also stated to Mr. Miller, "if you do not keep co-counsel (McKinnon) on a short leash, you will have problems in this case."

7. The statements made by Judge Bieda were made in open court and heard by several people in the Courtroom, including a representative of the District Attorney's Office and Linda Emery.

The first affidavit included with the motion for disqualification was that of Miller. It stated in relevant part:

8. At the conclusion of the hearing, Judge Bieda motioned for me to approach the bench, at which time Judge Bieda directly stated to me, "Don't you ever rub my nose in the fact that my court proceeding ran thirty minutes late, I gave you more time than you were allotted." Judge Bieda also told me that "you better keep co-counsel on a short leach, [sic] or we are going to have problems in this case." By "co-counsel," Judge Bieda was referring to Douglas G. McKinnon, Esq.

The second affidavit was that of Linda G. Emery and included the following statements:

4. While present in the courtroom, I saw Judge Bieda motion for Arnold Miller to approach the bench.

5. As Mr. Miller approaced [sic] the bench, Judge Bieda got up out of his seat,

**2.** Crim.P. 21(b)(2) provides that "[a]ny judge who knows of circumstances which disqualify him in a case shall, on his own motion, disqualify himself."

leaned towards Mr. Miller and stated "don't you ever rub my nose into the fact that my court proceeding ran thirty minutes late." I also heard Judge Bieda tell Mr. Miller "you better get along with this court on the next date or there will be trouble."

 Although there are some discrepancies between the motion and the affidavits concerning the exact language used by the court, there is sufficient agreement among the descriptions of the court's comments for us to evaluate their legal sufficiency. We hold that the motion and affidavits are legally sufficient to require disqualification. Again, to be legally sufficient, the motion and affidavits must state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent him from dealing fairly with the defendant. *Botham*, 629 P.2d at 595.

 Taken at face value, the court's comments concerning its confusion over McKinnon's position, as well as the court's remark admonishing McKinnon never again to complain about procedural delays, demonstrates that the court was experiencing considerable frustration. Although expressions of frustration and irritation by the court are to be discouraged, *see Drake*, 748 P.2d at 1249 (rude comments and discussions evidencing irritation should be avoided), they nevertheless sometimes occur under the pressure of a heavy docket. In and of themselves, such expressions ·of frustration may not be legally sufficient to require disqualification. However, in the present case, the· addition of the comment that Miller should keep McKinnon on a "short leash" raises the comments to a level of legal sufficiency.

We have described prejudice in the context of judicial disqualification as " 'a leaning toward one side of a question involved, from other considerations than those belonging to it, or a bias in relation thereto which would in all probability interfere with fairness in judgment.' " *Smith*, 629 P.2d at 1057 (quoting *Walker v. People*, 126 Colo. 135, 146, 248 P.2d 287, 294 (1952), in turn quoting *Burke*,

60 Colo. at 10, 152 P. at 152–53). Bias or prejudice by a judge against defense counsel may require disqualification when "the judge's manifestation of hostility or ill will is apparent from the motion and affidavits and indicates the absence of the impartiality required for a fair trial." *Brewster*, 811 P.2d at 814. The bias or hostility evidenced by the court's requirement that McKinnon be kept on a "short leash" indicates an absence of the impartiality necessary to assure that Klinck will receive a fair trial.

 Counsel for a defendant in a criminal case must be allowed to advocate his client's position zealously. While it is entirely proper for a court to require conformity with specific rules of court and standards of conduct, a court may not impose such a general constraint as that an attorney must be kept on a "short leash." The fairness of the judicial system as well as the requirement of judicial impartiality demands that an advocate be able to pursue the best interests of his client free from undefined and vaguely characterized restrictions. While the trial court in this case may have understood the parameters of its "short leash" requirement, defense counsel is left without guidance concerning this requirement and must as a result operate under unduly vague and restrictive conditions. The imposition of this ill-defined requirement, taken in context, gives rise to a reasonable inference of bias or prejudice against defense counsel. We therefore hold that the motion and affidavits are legally sufficient to require disqualification of Judge Bieda.

Accordingly, the rule to show cause is made absolute.