The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 17, 2020

## 2020COA137

## No. 18CA2050, *People v. Gilbert* — Criminal Law — Notice of Intent to Present Mental Condition Evidence

A division of the court of appeals construes the term "good
cause" as it is used in section 16-8-107(3)(b), C.R.S. 2019. Relying
on the definition of "good cause" articulated in *Ellis v. District Court*,
189 Colo. 123, 125, 538 P.2d 107, 108 (1975), the division
concludes that a party demonstrates good cause for his or her
post-arraignment filing of a notice of intent to present mental
condition evidence when (1) such notice was not given at the time of
arraignment due to mistake, ignorance, or inadvertence; and (2)
justice is best served by permitting the introduction of evidence
regarding a defendant's mental condition. The division further
concludes that defendant demonstrated good cause under this
standard because counsel notified the court as soon as he was

aware of defendant's mental condition, there is no evidence that counsel was negligent, and permitting defendant to secure evidence to support his planned defense would serve the ends of justice.

The division also determines that, pursuant to *People v. Brown,* 2014 CO 25, the district court made insufficient findings to support its denial of defendant's motion to continue the trial and for substitution of counsel.

Finally, the division rejects defendant's claim that the district court erred in denying his motion to disqualify the trial judge.

COLORADO COURT OF APPEALS  **2020COA137**

Court of Appeals No. 18CA2050
Adams County District Court No. 16CR3182
Honorable Thomas R. Ensor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Palmer Gilbert,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE RICHMAN
Dunn and Yun, JJ., concur

Announced September 17, 2020

Philip J. Weiser, Attorney General, Brian M. Lanni, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Springer & Steinberg, P.C., Harvey A. Steinberg, Craig L. Pankratz, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Palmer Gilbert, appeals a judgment of conviction entered on a jury verdict finding him guilty of several crimes related to the theft or attempted theft of cars.  We reverse his convictions and remand this case to the district court for additional findings.

## I.    Background

¶ 2    In September 2016, Gilbert committed a series of crimes that occurred in rapid succession after a Best Buy employee found him sitting in another employee's car in the store's parking lot.  The employee approached the car and spoke with Gilbert, who claimed that the car was his or that he had permission to sit in it.  When the employee contradicted him, Gilbert exited the car with a knife and began swinging it.  As the employee retreated, Gilbert fled on foot.

¶ 3    He subsequently stole or attempted to steal three different cars by threatening the occupants of those cars with the knife.  While fleeing in one of the stolen cars, he caused a collision.  He left the scene of the accident, stole a truck, and drove away.  Police found him and the stolen truck a week later in Wyoming.

¶ 4    At trial, Gilbert's defense was that several witnesses had misidentified him.  Nonetheless, the jury convicted him of one count

of aggravated robbery, § 18-4-302(1)(b), C.R.S. 2019; one count of attempted second degree assault, §§ 18-2-101(1), 18-3-203(1)(b), C.R.S. 2019; two counts of aggravated first degree motor vehicle theft, § 18-4-409(2), (3)(a.5), C.R.S. 2019; one count of second degree criminal trespass, § 18-4-503(1)(c), C.R.S. 2019; one count of careless driving, § 42-4-1402(1), (2)(b), C.R.S. 2019; and one count of leaving the scene of an accident, § 42-4-1601(1), (2)(a), C.R.S. 2019.

¶ 5     He now contends that his convictions should be reversed because the district court erred in denying (1) his request to undergo a mental health examination and present evidence that he was suffering from one or more mental conditions at the time of the incidents; (2) his right to the retained counsel of his choice; and (3) his motion to disqualify the trial judge.

## II.     Mental Examinations and Evidence

### A.     Relevant Facts

¶ 6     In November 2016, Gilbert appeared with retained counsel at a bond hearing. After his release on bond in December 2016, he absconded. He was apprehended and appeared for arraignment nearly a year later, on December 7, 2017. At his arraignment, he

pleaded not guilty. The court set a motions hearing for February 9, 2018, with trial to follow on April 2, 2018.

¶ 7    The day before the motions hearing, defense counsel filed a document entitled "Notice of Intent to Introduce Mental Condition Evidence" pursuant to section 16-8-107(3)(b), C.R.S. 2019. Section 16-8-107(3)(b) requires a defendant to give notice of his intent to present evidence of his mental condition, regardless of whether he has entered a plea of not guilty by reason of insanity. Notice must be given at his arraignment, or, if not at his arraignment, at any time prior to trial for good cause shown. *Id.* To present such evidence at trial, a defendant must permit a court-ordered mental health examination. *Id.*

¶ 8    In his notice, Gilbert asked the district court to order a mental health examination and vacate the scheduled trial date to allow time for it. Defense counsel asserted that although he would not change Gilbert's plea to not guilty by reason of insanity, he "would likely introduce evidence of Mr. Gilbert's impaired mental condition" to show that he did not have the necessary mens rea. Counsel argued that he had shown good cause for the late notice "in light of the defendant's absence from the jurisdiction of the court for a

3

period of time, and undersigned counsel's uncertainty . . . as to whether to introduce evidence of the defendant's mental condition, until recently. . . ."

¶ 9    At the motions hearing the next day, counsel stated, "I apologize to the Court, that in my review of the file, getting up to today's date and really going over everything with Mr. Gilbert, I have determined that I must seek at least some sort of evaluation, even on my side, to present my client's mental condition. . . ." He asserted that he would endorse four affirmative defenses: duress, self-defense, mistake of fact, and intoxication. He also stated,

> I believe that there might be an underlying mental illness that Mr. Gilbert is suffering from which may have added to his mistake of fact, which may have interacted with the intoxication, which may have interacted with his duress. . . . [A]s soon as that hit my brain, I thought I have got to immediately notify the district attorney and the Court. . . . I, in good faith, believe there's some underlying post-traumatic stress disorder and bi-polar [sic] disorder.

¶ 10    The district court denied Gilbert's requests on two grounds. The court opined that section 16-8-107(3)(b) did not apply because "[a]ll of these crimes are general intent crimes," and a defendant who does not raise an insanity defense may only present evidence of

4

his mental condition if it bears upon his capacity to form specific intent. *See* § 16-8-103(1)(a), C.R.S. 2019. "And so the issue of the defendant's capacity to form specific intent simply is not material or relevant in this case."

¶ 11 The court also ruled that Gilbert had not shown good cause for filing the motion after his arraignment because "there's no indication of what factual support there may be for this. And the court finds, quite frankly, that this is simply an issue of delay."

## B. Standard of Review

¶ 12 A district court has considerable discretion in determining the relevance and admissibility of evidence. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). Similarly, whether a defendant has demonstrated good cause for his actions is a question addressed to the court's sound discretion. *Garza v. People*, 200 Colo. 62, 64, 612 P.2d 85, 86-87 (1980). Absent a clear abuse of discretion by the district court, we will not disturb its rulings on appeal. *Id.* A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Salazar*, 2012 CO 20, ¶ 13.

## C. Relevance of the Proposed Evidence

¶ 13    We first address the district court's ruling that the proposed evidence was irrelevant because the charged crimes did not require specific intent.  As an initial matter, we note that the district court erred in determining that none of the crimes charged required specific intent.  In fact, the People charged Gilbert with second degree assault, a specific intent crime.[1]  § 18-3-203(1)(b).

¶ 14    Even so, the relevance of Gilbert's mental condition evidence is not determined by whether the charged crimes require specific intent.  To support its ruling to that effect, the district court relied on section 16-8-103(1)(a), which states that a defendant who has not raised an insanity defense "when charged with a crime requiring

---

[1] The court was correct, however, that with the exception of the charges for leaving the scene of an accident, the other charged crimes required general intent.  § 18-4-302(1)(b), C.R.S. 2019 (requiring a mens rea of knowingly for conviction of aggravated robbery); § 18-4-409(2), (3)(a.5), C.R.S. 2019 (requiring a mens rea of knowingly for aggravated first degree motor vehicle theft); § 18-4-503(1)(c), C.R.S. 2019 (requiring a mens rea of knowingly for second degree criminal trespass); § 42-4-1402(1), (2)(b), C.R.S. 2019 (requiring a mens rea of negligence for careless driving).  Leaving the scene of an accident is a strict liability crime.  § 42-4-1601(1), (2)(a), C.R.S. 2019; *People v. Manzo*, 144 P.3d 551, 557 (Colo. 2006).

6

a specific intent as an element thereof, may introduce evidence of the defendant's mental condition as bearing upon his or her capacity to form the required specific intent."  However, according to subsection (1)(b), subsection (1)(a) applies only to offenses committed before July 1, 1995.  The criminal conduct charged here occurred in 2016.  Therefore, the limitations contained in subsection (1)(a) do not apply.

¶ 15    Moreover, as the People concede, regardless of whether Gilbert pleaded not guilty by reason of insanity, pursuant to section 16-8-107(3)(b) and section 18-1-504(1)(a), C.R.S. 2019, evidence concerning a defendant's mental condition may be admitted to show that he lacked the mental state necessary for conviction, or to support an affirmative defense that negates the existence of a particular mental state.[2]  *People v. Wilburn*, 2012 CO 21, ¶ 20

---

[2] Colorado recognizes two forms of insanity.  *People v. Sommers*, 200 P.3d 1089, 1093 (Colo. App. 2008).  A person is considered legally insane when he or she is "so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong" or is suffering from "a condition of mind caused by mental disease or defect that prevented the person from forming a culpable mental state that is an essential element of a crime charged."  § 16-8-101.5(1)(a), (b), C.R.S. 2019.  Whether the proffered evidence requires a defendant to plead not guilty by

(noting that "when a defendant's mental condition is not so severe as to be included in the statutory definition of 'insanity,' but instead is offered to show that the defendant had a mistaken belief of fact that negates the existence of a culpable mental state, expert testimony concerning the mental condition can be admissible") (footnote omitted) (citation omitted); *People v. Vanrees*, 125 P.3d 403, 409 (Colo. 2005) (concluding that the defendant could introduce evidence of his "mental slowness" to factually contest whether he formed the requisite mental state, although he did not raise an insanity defense).

¶ 16    In fact, as a matter of constitutional due process, regardless of whether a crime requires general intent or specific intent, a defendant has a right to introduce relevant evidence that he did not

---

reason of insanity depends on the diagnosis rendered and the degree of impairment found. *People v. Wilburn*, 2012 CO 21, ¶ 20 (noting that the proper use of evidence is determined by the severity of impairment); *People v. Requejo*, 919 P.2d 874, 877-78 (Colo. App. 1996). At this point, Gilbert has offered only a good faith basis for his defense and he has not had a mental health examination. Therefore, the evidence is insufficient to determine whether his alleged impairments rise to the level of insanity or are simply a "mental condition." We need not decide this issue to determine whether the errors raised are reversible, and we decline to do so.

possess the necessary mens rea due to a mental condition. *Hendershott v. People*, 653 P.2d 385, 391 (Colo. 1982) ("[I]t would be a violation of due process to require the prosecution to establish the culpable mental state beyond a reasonable doubt while, at the same time, to prohibit a defendant from presenting evidence to contest this issue."); *People v. Welsh*, 176 P.3d 781, 791 (Colo. App. 2007).

¶ 17    Here, Gilbert sought to introduce evidence that due to bipolar disorder and/or post-traumatic stress disorder, he made a mistake of fact that prevented him from forming one or more of the mental states required for conviction. This is exactly the type of evidence that was deemed admissible in *Wilburn* and *Vanrees*, and Gilbert has a due process right to present it so long as he has met the procedural requirements of section 16-8-107(3)(b) and the evidence is otherwise admissible under the Colorado Rules of Evidence. *People v. Flippo*, 159 P.3d 100, 106 (Colo. 2007) ("Although a defendant is entitled to present evidence in his or her defense, the manner in which the evidence is presented may be controlled by statute."); *Hendershott*, 653 P.2d at 394 n.6 (noting that although evidence of a mental impairment is admissible when the crimes charged require general intent, the district court may require the

defendant to comply with the Colorado Rules of Evidence as a condition precedent to its admission). Therefore, we conclude, and the People agree, that the district court erred in excluding the proffered evidence on the grounds that it was irrelevant under section 16-8-103(1)(a).

## D. Good Cause

¶ 18 We next address the district court's ruling that Gilbert failed to show good cause for his untimely notice pursuant to section 16-8-107(3)(b) because his claim lacked factual support and was made to delay the proceedings.

### 1. Law

¶ 19 As discussed above, *supra* Part II.A, a defendant who intends to introduce evidence of his mental condition must permit a court-ordered mental health examination and "shall" give notice at arraignment of his intent to present such evidence, "except that the court, for good cause shown, shall permit the defendant to inform the court and prosecution of the intent to introduce such evidence at any time prior to trial." § 16-8-107(3)(b).

¶ 20 "Good cause" is not defined anywhere in article 8 and we have not found any published decisions clarifying its meaning as used in

10

section 16-8-107(3)(b). *See Flippo,*159 P.3d at 103 n.6 (declining to define "good cause" under section 16-8-107(3)(b) because it was not raised on appeal). Therefore, as a matter of first impression, we must construe the term "good cause" as it is used in this subsection. This is a purely legal issue that we review de novo. *People v. Garcia,* 113 P.3d 775, 780 (Colo. 2005).

¶ 21    When construing a statute, our goal is to give effect to the General Assembly's intent, and we must first consider the plain meaning of the statutory language. *Flippo,* 159 P.3d at 104. Where, as here, a term such as "good cause" is not defined in the statute, we may look to the statutory scheme as a whole to determine its meaning. *Id.* We must also bear in mind that, according to the supreme court, the current version of Colorado's insanity statute was enacted to "create[] a 'unitary process for hearing the issues raised' by the combined affirmative defense of 'not guilty by reason of insanity' (insanity and impaired mental condition), and a not guilty plea on the merits." *Vanrees,* 125 P.3d at 408 (quoting §§ 16-8-101.3 and 16-8-104.5, C.R.S. 2019).

¶ 22    Turning to plain language of the statute, we find it significant that section 16-8-107(3)(b) states that it applies "[r]egardless of

11

whether a defendant enters a plea of not guilty by reason of insanity pursuant to section 16-8-103 . . . ." As the supreme court noted in *Flippo,* "[r]egardless of" may be defined as "in spite of; with no heed to." 159 P.3d at 104 n.7 (quoting American Heritage Dictionary 1469 (4th ed. 2000)). In other words, this language indicates that the legislature did not intend to place weight on the legal distinction between evidence that is introduced to support an insanity plea and evidence of a "mental condition" that is introduced for other purposes.

¶ 23 We also find it significant that the term "good cause" is used elsewhere in article 8 in connection with late entry of insanity pleas. Under section 16-8-103(1)(a) and (1.5)(a), a defendant who wishes to enter a plea of not guilty by reason of insanity must do so at the time of arraignment, "except that the court, for good cause shown, may permit the plea to be entered at any time prior to trial." This language is substantially similar to that used in section 16-8-107(3)(b).

¶ 24 As in section 16-8-107(3)(b), good cause is not defined in section 16-8-103(1)(a) and (1.5)(a), but case law holds that "good cause" is demonstrated if (1) justice is best served by permitting the

12

additional plea; and (2) the correct plea was not entered at the time of arraignment due to mistake, ignorance, or inadvertence. *People v. Reed*, 692 P.2d 1150, 1151 (Colo. App. 1984) (citing *Ellis v. Dist. Court*, 189 Colo. 123, 125, 538 P.2d 107, 108 (1975)); *see also Garza*, 200 Colo. at 64, 612 P.2d. at 86.

¶ 25    Because the relevant statutory language and the insanity statute's unified structure indicate that "good cause" under section 16-8-107(3)(b) must mean something similar to "good cause" under section 16-8-103(1)(a) and (1.5)(a), we conclude that a defendant who has not pleaded insanity, but seeks to plead a mental condition defense, demonstrates "good cause" for delay under section 16-8-107(3)(b) when (1) notice was not given at the time of arraignment due to mistake, ignorance, or inadvertence; and (2) justice is best served by permitting the introduction of evidence regarding a defendant's mental condition. *See Garza*, 200 Colo. at 64, 612 P.2d. at 86. Further, when considering whether good cause has been shown, courts should construe section 16-8-107(3)(b) liberally in the defendant's favor. *See Reed*, 692 P.2d at 1151 (concluding that section 16-8-103(1) should be construed liberally in favor of defendants).

¶ 26    Further, a court's discretion to exclude evidence of a defendant's mental condition under section 16-8-107(3)(b) is narrower than its discretion under section 16-8-103(1)(a) and (1.5)(a). Subsection 107(3)(b) states that a court "shall permit" notice to be given if good cause is shown, while subsections 103(1)(a) and (1.5)(a) state that a court "may permit" a change of plea upon a showing of good cause. The language of subsection 107(3)(b) is therefore mandatory while the language of subsections 103(1)(a) and (1.5)(a) is permissive. *Riley v. People*, 104 P.3d 218, 221 (Colo. 2004) ("There is a presumption that the word 'shall' when used in a statute is mandatory.").

## 2. Analysis

¶ 27    For several reasons, we conclude that the district court erred in determining that Gilbert failed to show good cause for delay.

¶ 28    First, while the fact that Gilbert absconded after he was charged could weigh against a finding of good cause, *see Garza*, 200 Colo. at 64, 612 P.3d at 87, his flight is not a determinative factor in deciding whether, at the time of arraignment, his counsel could have given the required notice. Although counsel and his associates met with Gilbert several times before Gilbert absconded,

they apparently noticed no mental health issues in those meetings. Therefore, it is unclear whether Gilbert's subsequent absence was the reason his mental health issues went unnoticed.

¶ 29    Second, at the time of the hearing, the record contained no evidence that counsel had delayed meeting with Gilbert or that he had otherwise failed to properly investigate the case. And once counsel had a good faith basis to notify the court of his concerns about Gilbert's mental health, he did so. In similar circumstances, courts have found that counsel's ignorance constituted good cause for delay. *See Reed*, 692 P.2d at 1152 (concluding that it was an abuse of discretion to deny defendant's motion because counsel promptly notified the court of the plea change as soon as he had a good faith basis for doing so, and he had not performed negligently); *see also Ellis*, 189 Colo. at 125, 538 P.2d at 108 (holding that the defendant had shown good cause for a late change in plea where, through no fault of his own, counsel had only recently learned that his client was previously adjudged clinically insane); *Taylor v. Dist. Court*, 182 Colo. 406, 408, 514 P.2d 309, 310 (1973) (deciding that good cause for a change in plea was shown where the defendant disclosed new evidence to defense counsel after arraignment

15

because his trial had recently been severed from his codefendant's trial).

¶ 30    Third, the record does not support the district court's conclusion that the notice was filed for purposes of delay.  Counsel filed the notice nearly two months before trial.  Thus, notice was given early enough to prevent substantial disruptions to the trial schedule.  This factor should have also weighed in Gilbert's favor, but it appears that the district court did not consider it.  *Gallegos v. People*, 166 Colo. 409, 417, 444 P.2d 267, 271 (1968) (stating that when there is still time for an examination, a trial judge should proceed with "utmost circumspection" in denying defendant's motion).  Because the finding of no good cause prevented Gilbert from potentially developing an affirmative defense of mistake of fact, and, if justified, he had a constitutional due process right to present it, justice would have been served by allowing the mental health examination that Gilbert requested.

¶ 31    Fourth, in concluding that Gilbert had not shown good cause, the district court stated that there was inadequate factual support for the allegation that he suffered from one or more mental conditions.  However, once a defendant has shown that his

16

allegations regarding his mental condition have been made in good faith, "the court's inquiry must be focused on the reason for the delay . . . rather than the potential merits" of the evidence. *Reed,* 692 P.2d at 1152. Counsel made a good faith representation that Gilbert likely suffered from bipolar or post-traumatic stress disorders. This offer of proof was facially adequate, and the district court erred in prematurely considering the merits of the evidence.

¶ 32 The district court considered factors that it should not have considered, and its findings are not supported by the record. We therefore conclude that the district court abused its discretion in determining that Gilbert had not shown good cause pursuant to section 16-8-107(3)(b).

### 3. Reversal

¶ 33 The effect of the district court's error was to impede Gilbert's plan to develop and present evidence in support of the affirmative defense of mistake of fact at trial. If a defendant presents some credible evidence in support of his affirmative defense at trial, i.e., he carries the burden of going forward, the prosecution then has the burden of disproving the affirmative defense beyond a reasonable doubt. *Garcia,* 113 P.3d at 783-84. Therefore, "[i]f the

17

trial court errs in disallowing an affirmative defense, then it improperly lowers the prosecution's burden of proof," violating the defendant's right to due process. *Id.* at 784. Such an error is not harmless and is reversible if the district court disallowed an affirmative defense despite the introduction of credible evidence to support it. *Id.* at 783-84; *Hendershott,* 653 P.2d at 392 n.5.

¶ 34    In this case, we cannot determine whether the error was harmless because Gilbert was not given an opportunity to introduce expert testimony or other mental condition evidence in support of his affirmative defense. The district court made a pretrial ruling that he was not entitled to a mental health examination and it excluded all evidence of his mental condition before trial. This ruling precluded the court from later ruling on whether there was any credible evidence to support an affirmative defense at trial, a question of law for the court. *Garcia,* 113 P.3d at 784.

¶ 35    Because Gilbert was denied the opportunity to meet the burden of going forward with his affirmative defense, and the record is insufficient to allow us to decide this issue, we reverse his convictions except for the conviction for leaving the scene of accident, a strict liability crime to which the defense of mistake of

fact does not apply. *Manzo*, 144 P.3d at 557. This conviction is, however, reversed below subject to the district court's findings on remand pursuant to *People v. Brown*, 2014 CO 25.

¶ 36 We also remand this case to the district court for further proceedings. On remand, the court must order a mental health examination pursuant to section 16-8-107(3)(b). It must then allow both parties to supplement the trial record with offers of proof or expert testimony regarding Gilbert's mental condition at the time of the charged offenses.

¶ 37 If the district court subsequently determines that Gilbert has admissible evidence that his mental condition at the time of the offenses could support a mistake of fact defense, the judgment will remain reversed and a new trial is required. If, however, Gilbert fails to come forward with admissible evidence, or the evidence presented indicates an illness so severe as to require an insanity plea, then the district court shall reinstate the judgment, subject to a right to appeal that determination.

### III. Right to Counsel of Choice

#### A. Relevant Facts

¶ 38    At a pretrial hearing in March 2018, defense counsel notified the court that Gilbert's family was hiring new counsel. Trial was set to begin five days later. The court responded, "[T]hat's a little too late." It then preemptively denied any forthcoming motions to continue noting that new counsel had not entered an appearance, the trial was scheduled to begin in five days, and there had already been several delays. Current defense counsel affirmed that he was ready for trial.

¶ 39    The next day, two new attorneys filed a notice of appearance and a motion to continue the trial. However, the notice of appearance was made conditional upon a continuance. The People filed a written objection to the motion, addressing each of the factors set forth in *Brown*.

¶ 40    Two days later, Gilbert appeared at a hearing on the motion to continue with defense counsel and his new attorneys. One of the new attorneys asserted that defense counsel's relationship with Gilbert was fractured due to "comments that have been made in regards to his attorney's knowledge of the case and preparedness

for trial" and these "irreconcilable differences . . . will jeopardize his ability to cooperate with [existing] counsel at trial."[3] The People reiterated their written objections. Of particular import was the fact that the victim who had confronted Gilbert in the Best Buy parking lot had been diagnosed with lymphoma, was "undergoing very aggressive chemotherapy," and might not be able testify at a later time. The People also stated that two other victims had expressed frustration at the length of time the case had taken.

¶ 41 The district court denied the motion to continue. In doing so, it acknowledged Gilbert's right to hire the counsel of his choice, but it noted that this right is not absolute. Setting forth several reasons for its denial, the court opined that "this 11th hour attempt to . . . enter an appearance to change attorneys is just one more attempt by Mr. Gilbert to delay this case." It also noted, among other matters, that existing counsel remained able to render effective assistance at trial.

---

[3] It is apparent from the record that the comments to which counsel referred were made by the trial judge at the hearing on February 9, 2018. The details of the judge's statements are set forth in Part IV.A of this opinion.

## B. Standard of Review

¶ 42 District courts are given broad discretion to grant or deny a continuance. *People v. Travis*, 2019 CO 15, ¶ 12. In this context, a court errs only when is its decision is arbitrary, unreasonable, or a cause of material prejudice to a defendant. *Brown*, ¶ 19.

## C. Law

¶ 43 When a defendant has the financial means to retain private counsel, the Sixth Amendment right to counsel includes the right to be assisted by counsel of his choice and the right to the effective assistance of counsel. U.S. Const. amend. VI; *see also* Colo. Const. art. 2, § 16; *Ronquillo v. People*, 2017 CO 99, ¶ 16; *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). The right to counsel of choice is the right to hire a particular lawyer regardless of his or her effectiveness. *Ronquillo*, ¶ 16. The right to effective assistance ensures the baseline competence of counsel. *Id.*

¶ 44 Because the right to counsel of choice is central to our adversarial system, a district court must recognize a presumption in favor of chosen counsel. *Id.* at ¶ 17. However, the defendant's right to choose his counsel is not absolute in all cases. *Brown*, ¶ 17. When his desire to hire new counsel will delay the

proceedings, a court must "balance the defendant's Sixth Amendment right to counsel of choice against the demands of fairness and efficiency." *Id.* at ¶ 20. Only when a court arbitrarily insists upon moving forward despite a justifiable request for delay will the denial of a motion to continue constitute an abuse of discretion. *Id.*

¶ 45 To properly balance the defendant's right to counsel of choice against the public's interest in the efficiency and integrity of the justice system, the district court must consider and make a record on the impact of multiple factors: (1) the defendant's motive and conduct related to the motion; (2) chosen counsel's availability; (3) the length of the necessary continuance; (4) the potential prejudice to the prosecution, beyond mere inconvenience, if the motion is granted; (5) any inconvenience to witnesses; (6) "the age of the case, both in the judicial system and from the date of the offense"; (7) the number of continuances that were already granted; (8) the timing of the motion; (9) the impact of delay on the court's docket; (10) if the victims' rights act applies, the victim's position; and (11) any other factors that militate against further delay. *Id.* at ¶ 24.

## D. Analysis

¶ 46 Gilbert contends that the district court abused its discretion because it cited defense counsel's ability to render effective assistance in support of its decision to deny a continuance when that is not one of the factors set forth in *Brown*. He also asserts that the district court erred by failing to properly consider the *Brown* factors. *Id.*

¶ 47 We acknowledge that, in *Brown*, the supreme court did not list the ability of existing counsel to render effective assistance as a relevant factor. *Id.* However, at the beginning of the hearing on the motion to continue the trial, one of Gilbert's new attorneys argued that Gilbert and his existing counsel had such "irreconcilable differences" that Gilbert might not be able to assist counsel in preparing for trial. In essence, Gilbert's new attorney was raising the possibility that, due to a breakdown in communication, current defense counsel might not be able to render effective assistance at trial. *Ronquillo*, ¶ 35 n.2 (noting that good cause is not required to dismiss retained counsel, "[b]ut if good cause exists, such as a complete breakdown in communication or an irreconcilable conflict, then current counsel cannot effectively represent the defendant"). If

24

counsel cannot render effective assistance, a defendant is entitled to a continuance to allow time for replacement counsel to become effective. *Id.* Because Gilbert raised this additional concern, the court did not err in addressing it.

¶ 48 However, the district court erred in denying the substitution of counsel and the request for a continuance without citing the *Brown* case and its eleven factors, and it failed to make specific findings based on the eleven factors listed in *Brown*.

¶ 49 *Brown* holds that "when deciding whether to grant a continuance to allow a defendant to change counsel, the trial court must conduct a multi-factor balancing test and determine whether the public's interest in the efficiency and integrity of the judicial system outweighs the defendant's Sixth Amendment right to counsel of choice." *Id.* at ¶ 2. Because the district court failed to do so, the record before us is inadequate to determine if the court properly exercised its discretion. Thus, as in *Brown*, we must reverse all of Gilbert's convictions and remand this case to the district court for additional findings and conclusions.

¶ 50 On remand, the district court should make specific findings concerning each *Brown* factor. Additional findings are particularly

necessary on the issues of chosen counsel's availability, the age of the case, the number of continuances already granted, the impact of any delay on the court's docket, and the positions of the victims. If, after a full evaluation of the *Brown* factors, the district court finds that Gilbert was not entitled to a continuance, it should reinstate the judgment of conviction, subject to appeal. If, however, the court finds that Gilbert's right to counsel of choice was violated, the reversal stands and a new trial is required.

## IV. Motion to Disqualify Trial Judge

### A. Relevant Facts

¶ 51 When defense counsel filed a late notice of his intent to present evidence of Gilbert's mental condition, the trial judge revealed his frustration with counsel's tardiness in the following exchange:

> Court: You know, frankly, [counsel], I'm getting tired of the surprises that come in here when you're involved in cases. It's concerning to this Court as to whether or not you're really prepared for cases. Have a seat. We may have to call this up — we are going to call this up at 1:30, okay.

> Counsel: Your honor, I have a sentencing hearing . . . .

> Court: I don't care what you have got.  You were supposed to give me notice on this.  You're going to be here at 1:30, period.

¶ 52     According to Gilbert, the trial judge subsequently demeaned defense counsel by stating, "Let's call the Urango matter, another one of [counsel's] former clients . . . . ."  When the hearing reconvened, the district court denied Gilbert's request for a mental health examination and concluded that no good cause had been shown.

¶ 53     Several weeks later, Gilbert filed a motion for substitution of the trial judge, arguing that his rulings regarding the proposed mental condition evidence were clearly erroneous.  Counsel also argued that when expressing his frustration at the hearing, the judge had "crossed the line into personal slander of undersigned counsel's character" and weakened Gilbert's confidence in him.  Based on this conduct, counsel argued that the trial judge appeared to be biased against him, and by extension, Gilbert.  The district court summarily denied the motion.

## B.     Law

¶ 54     We review de novo a motion to disqualify a judge in a criminal case.  *People v. Schupper*, 2014 COA 80M, ¶ 56.

¶ 55    In Colorado, a judge's authority to preside over a particular case is limited by rule, statute, and judicial code.  *People v. Roehrs*, 2019 COA 31, ¶ 8; *Schupper*, ¶ 57.  As relevant here, pursuant to section 16-6-201(1)(d), C.R.S. 2019, a "judge of a court of record shall be disqualified to hear or try a case if . . . he [or she] is in any way interested or prejudiced with respect to the case, the parties, or counsel."  *See also* Crim. P. 21(b)(1)(IV); C.J.C. 2.11(A)(1).

¶ 56    The denial of the motion to disqualify a judge warrants reversal only where the record clearly establishes the judge had "a substantial bent of mind" against a party or his counsel.  *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988); *see also Schupper*, ¶ 59.  A motion will be considered legally sufficient only if its allegations, if taken as true, state facts from which it may reasonably be inferred that the judge is biased or prejudiced with respect to the case, the parties, or counsel.  *Rodriguez v. Dist. Court*, 719 P.2d 699, 703 (Colo. 1986); *Estep v. Hardeman*, 705 P.2d 523, 526 (Colo. 1985).

¶ 57    In addition, the moving party's filing must be verified, timely, and supported by the affidavits of at least two credible persons unrelated to the defendant.  § 16-6-201(3); Crim. P. 21(b)(1).

## C. Analysis

¶ 58 Gilbert's motion to disqualify the trial judge was verified, but was not supported by two affidavits. The court's denial of the motion is proper on these grounds alone. *People v. Taylor*, 131 P.3d 1158, 1167 (Colo. App. 2005) (affirming the denial of a motion to disqualify the judge, in part, because there were no affidavits); *see also Altobella v. People*, 161 Colo. 177, 184, 420 P.2d 832, 835 (1966) (concluding that previously filed affidavits could not be incorporated by reference and the motion was therefore insufficient).

¶ 59 Further, even if we were to consider the motion on its merits, its allegations are insufficient to permit a reasonable inference that the trial judge was biased.

¶ 60 The motion alleged that the district court's denial of Gilbert's request for a mental health examination and its exclusion of evidence regarding his mental condition demonstrated bias because it was clearly erroneous. As stated above, the district court's ruling was, indeed, erroneous. However, erroneous legal rulings alone do not demonstrate that a judge is biased or prejudiced. *Schupper*, ¶ 58 (noting the even if a judge makes numerous and continuous

29

rulings that are erroneous, his or her errors alone are insufficient proof of bias or prejudice); *People v. Thoro Prods. Co.*, 45 P.3d 737, 747 (Colo. App. 2001), *aff'd,* 70 P.3d 1188 (Colo. 2003).

¶ 61     The motion also alleged that the trial judge treated defense counsel with disdain by implying that he was unprepared, that the trial judge mocked him in front of Gilbert when he made reference to "another former client," and that "the lack of judicial demeanor towards undersigned counsel evidenced bias and prejudice . . . ."

¶ 62     Inappropriate expressions of frustration sometimes occur in a courtroom.  They generally do not require disqualification of the trial judge.  *Klinck v. Dist. Court,* 876 P.2d 1270, 1277 (Colo. 1994) (concluding that the judge's rude and accusatory statements were not sufficient evidence of bias); *Drake,* 748 P.2d at 1249 (holding that there was insufficient evidence of bias despite the judge's snide and insinuating manner); *Bocian v. Owners Ins. Co.* 2020 COA 98, ¶ 25 (noting that while the judge made a snide comment regarding an ethical issue, he did not expressly accuse counsel of ethical misconduct, and his comment was not evidence of bias).

¶ 63     Only where a judge's comments evince something more than rudeness are they sufficient to raise a reasonable inference that the

judge is biased. *Klinck*, 876 P.2d at 1277 (holding that a judge's comment that counsel should be kept on a "short leash" created uniquely restrictive conditions at trial, and therefore compromised its fairness); *Estep*, 705 P.2d at 526-27 (noting that the trial judge's comments on the credibility of prospective witnesses suggested that he had prejudged the case, an indication of bias). Here, the trial judge's comments may have been rude, but they were not so inappropriate as to indicate that the judge lacked the impartiality required to preside over the case. Therefore, the district court did not err in denying Gilbert's motion.

## V. Conclusion

¶ 64 We reverse on two separate grounds in this case subject to the district court's findings on remand. As a practical matter, both grounds for reversal must be addressed before the judgment of conviction can be reinstated in full.

JUDGE DUNN and JUDGE YUN concur.