23CA1499 Marriage of Matchette 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1499
Garfield County District Court No. 22DR73
Honorable Stephen A. Groome, Judge

In re the Marriage of

Michael Thomas Matchette,

Appellee,

and

Rebecca Lynn Matchette,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Yun and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

No Appearance for Appellee

Rebecca Lynn Matchette, Pro Se


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this dissolution of marriage case between Michael Thomas Matchette (husband) and Rebecca Lynn Matchette (wife), wife asks us to set aside the permanent orders.  We affirm.

## I.    Background

¶ 2    Husband petitioned to dissolve the parties' long-term marriage in April 2022.  Both parties proceeded pro se until July 2022, when wife retained an attorney.  Husband retained counsel in September 2022, who represented him for the remainder of the proceedings.  Wife's counsel moved to withdraw in November 2022, and the court granted the motion.

¶ 3    The court held a hearing on temporary orders in March 2023.  Pursuant to the parties' stipulation, the court ordered that "wife shall have exclusive possession of the [h]ome," and that husband "shall pay . . . the regular expenses for the [h]ome."  The court also awarded wife prospective attorney fees.  It ordered husband to pay $6,000 directly to wife's counsel, once "he ha[d] confirmation" that wife had hired an attorney, and ordered wife to pay any balance, if necessary.  The court set a permanent orders hearing for May 31, 2023.

¶ 4    Both parties moved to continue the May hearing. The court granted the motions to continue and reset the permanent orders hearing for July 10, 2023.

¶ 5    At the pretrial hearing held on June 29, 2023, wife appeared pro se and again asked to continue the permanent orders hearing. She informed the court that she had "found [a lawyer] that would take the case" and gave the court his name. When the court asked why the lawyer was not present, wife asserted that husband had not paid attorney fees as the temporary orders required. Husband's counsel told the court that "this [was] the first time [she had] heard about any attorney." She asked the court to deny wife's request for another continuance, emphasizing that the case had been pending for more than a year. The court denied wife's motion to continue but advised her that a different judicial officer would preside over the hearing so, if she retained counsel "who actually enter[ed] an appearance," and counsel sought "some type of relie[f]," the other judicial officer would make a decision "after the motion [wa]s filed and [the lawyer] enter[ed] an appearance."

¶ 6     On the Friday before the Monday permanent orders hearing, wife filed a pro se motion for additional attorney fees; the first page of a "representation agreement" from a lawyer, dated June 23, 2023; and two motions to continue the hearing.

¶ 7     On the day of the hearing, wife again appeared pro se and asked for a continuance because her "attorney wasn't able to make it today." She explained that she had retained the lawyer on June 23, 2023, and she had asked husband's counsel and husband to pay the $6,000 ordered in the temporary orders, but "they did nothing." Wife told the court that "after 43 years of marriage, [she] believe[d] that [she] should have a lawyer," and that it was her "desire to have a lawyer represent [her]" at the hearing.

¶ 8     Husband's counsel acknowledged that wife gave her the name of a lawyer on June 29. According to husband's counsel, husband called wife's lawyer, but he did not call husband back. Then husband's counsel contacted wife's lawyer and asked "if he was going to be representing [wife]." The lawyer responded by asking if husband's counsel would agree to a continuance. Husband's counsel said no, and she "never heard back from [wife's lawyer]."

3

¶ 9 The court denied wife's motion to continue, finding that the proceeding had been pending "for a long time," the issues were "pretty straightforward," and it was unfair to require husband to continue paying the mortgage and for wife to "keep living there basically for free indefinitely." The permanent orders hearing then proceeded with wife representing herself.

¶ 10 After hearing evidence, the court made oral rulings dividing the marital estate and later issued a written order. The court ordered that wife vacate the marital home by the end of August 2023, that husband place the home on the market, and that the parties split the proceeds of the sale equally. The court split the parties' remaining property roughly equally, assigning each party one or more vehicles, their own personal effects and bank accounts, and responsibility for their personal debts. The court ordered a $4,000 equalization payment to wife to account for certain silver items awarded to husband. Lastly, the court awarded the parties' horses to husband, determining that he was likely better able to find a place to board them and provide consistent care.

## II. Motion to Continue

¶ 11    On appeal, wife contends that we should set aside the permanent orders and remand the case for a new hearing because the court denied her motion to continue.

¶ 12    We review a court's denial of a motion to continue for an abuse of discretion. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 13. A court abuses its discretion when its ruling is manifestly arbitrary, unfair, or unreasonable. *Id.*

¶ 13    In determining whether to grant a continuance, the court should consider the circumstances of the case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that might result from delay. *Butler v. Farner*, 704 P.2d 853, 858 (Colo. 1985); *Bithell v. W. Care Corp.*, 762 P.2d 708, 711 (Colo. App. 1988). The burden to show good cause for a continuance falls on the party requesting it. *In re Marriage of Lorenzo*, 721 P.2d 155, 156 (Colo. App. 1986).

¶ 14    Here, wife had more than three months from the temporary orders to retain an attorney, yet she made contact with the lawyer only a couple of weeks before the permanent orders hearing. That

5

lawyer never entered an appearance or otherwise indicated to the court that he intended to represent wife. And although wife told the court that her lawyer was unable to appear on the date of the hearing, she never said that the lawyer had agreed to appear on any other date. The lawyer himself never asked for a continuance. According to husband's counsel, no one had paid the lawyer because he failed to re-contact husband's counsel after she refused to agree to a second continuance. Thus, the court had no assurance that wife had a lawyer who had unconditionally agreed to represent her, nor did the court have any information about when a lawyer would be available to appear on wife's behalf at a rescheduled hearing.

¶ 15        Under the circumstances, we cannot say that the court abused its broad discretion. The court appropriately weighed the prejudice to wife of proceeding pro se against the financial prejudice to husband if the hearing were continued. The court could also properly consider whether, if it granted a continuance, wife would appear with counsel at a later date. The court engaged in this analysis twice, once at the pretrial hearing and again the morning

of the permanent orders hearing.  Both times, the court made the same findings and reached the same conclusions.

¶ 16    In determining whether a trial court's decision is manifestly arbitrary, unreasonable, or unfair, the question is not whether we would have reached a different result.  *See Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 74.  Instead, we review the decision only to ensure "that it was based on credible evidence and that it did not exceed the bounds of rationally available choices."  *Id.* (citation omitted).  Because, on this record, the court's decision not to grant a second continuance in a case that had been pending for more than a year was not irrational, we will not substitute our judgment for that of the trial court.

### III.    Other Contentions

¶ 17    First, wife appears to argue that the trial judge was biased. We disagree.

¶ 18    A party asserting bias on the part of the trial judge must establish that the judge had a "substantial bent of mind against him or her."  *People v. Drake,* 748 P.2d 1237, 1249 (Colo. 1988).

Mere speculative statements and conclusions are insufficient to satisfy the burden of proof.  *Id.*

¶ 19    To the extent wife relies on the court's sometimes brusque comments, we conclude that any comments fall far short of demonstrating actual bias.  *See, e.g., Klinck v. Dist. Court,* 876 P.2d 1270, 1277 (Colo. 1994) (concluding that the judge's rude and accusatory statements were not sufficient evidence of bias).  The court's comment that wife's demeanor affected her credibility was not improper.  It is the court's job to assess credibility during the hearing.  *In re Marriage of Hatton,* 160 P.3d 326, 330 (Colo. App. 2007) (district court determines the credibility of witnesses and the sufficiency, probative effect, and weight of the evidence).  To the extent wife relies on the court's adverse rulings, wife does not provide any legal authority, record support, or specific allegations about why or how the court's rulings were improper.  And in any event, adverse rulings do not establish bias.  *People in Interest of S.G.,* 91 P.3d 443, 448 (Colo. App. 2004) ("Unfavorable rulings and a court's alleged personal opinion formed from the judicial proceeding are insufficient to establish bias.").

¶ 20    Second, wife asserts that the court erred in dividing the marital property. Specifically, she says the court should have awarded her a 2004 Ford truck and the parties' horses. Again, we disagree.

¶ 21    We do agree with wife that the court incorrectly determined that she had not listed the Ford truck on her financial disclosures. Nonetheless, this inaccuracy did not render the property division erroneous. As husband explained at the hearing, the truck was given to the parties' son during the marriage. Therefore, at the time of the property division, husband did not own the truck, and the court could not have awarded it to wife as marital property. *See In re Marriage of Schmedeman*, 190 P.3d 788, 790-91 (Colo. App. 2008) (because husband gave a cabin to his parents during the marriage, it was not "marital property" subject to division upon dissolution of the marriage).

¶ 22    As for the horses, wife does not explain why the court's decision to award the horses to husband constitutes error. Wife testified that she did not "know[] right here today" what she would do with the horses; she said she would "have to see if somebody

[she] kn[ew] ha[d] a spot for them." The court found that wife was unlikely to be able to keep the horses, she was not in a financial position to take care of them, and, if awarded to her, the horses "would suffer." We see nothing manifestly arbitrary, unreasonable, or unfair about the court's decision.

¶ 23 Finally, although wife asks whether "there's any way that [ownership of the marital home] could be mediated to come to a better conclusion," we note that the parties waived mediation. And wife does not explain why the court's decision to equally distribute the proceeds from the sale of the home constitutes an abuse of discretion.

## IV. Disposition

¶ 24 The judgment is affirmed.

JUDGE YUN and JUDGE BERGER concur.